[No. B230788. Second Dist., Div. Five. Sept. 29, 2011.]

THE PEOPLE, Plaintiff and Respondent, v.
BRIAN BOULTER, Defendant and Appellant.

COUNSEL

Richard L. Fitzer, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Pamela C. Hamanaka, Assistant Attorney General, Michael C. Keller and Idan Ivri, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

MOSK, J.—

## INTRODUCTION

. Defendant and appellant Brian Boulter (defendant) pleaded no contest to possession for sale of a controlled substance (Health & Saf. Code, § 11378).

On appeal, defendant contends that the trial court erred in denying his motion to suppress evidence. We hold that a search of the jail lockers into which defendant, a jail visitor, put belongings was, under the circumstances, an appropriate and valid administrative search. Thus, we affirm the judgment.

## ·BACKGROUND

### A. *Factual Background*[1]

At the time of defendant's arrest, the lockers at the Men's Central Jail in Los Angeles were outdoors on jail property, and made available for use by jail visitors to secure property prohibited inside the jail's visitors center, which was indoors. The lockers were approximately 41 feet from the entrance to the visitors center, at which entrance there was a sign stating that no cameras, cellular telephones, recording devices, or purses were allowed inside the visitors center, and another sign stating, "Warning: persons entering this area are subject to the laws affecting a custody facility. You and your possessions are subject to search at any time." A sign was posted near the lockers also stating that no cameras, cellular telephones, recording devices, or purses were allowed inside the visitors center. Visitors did not pass through metal detectors and were not searched before they had access to the lockers. Visitors did not need permission from a jail representative to use an available locker.

Because a Los Angeles County Sheriff's Department deputy observed defendant inside the visitors center with a camera, the deputy arrested defendant, believing defendant to be in violation of Penal Code section 4575.[2] Another deputy sheriff searched defendant "incident to the arrest" and recovered two keys for lockers for jail visitors. That deputy sheriff used the keys to search the two lockers. Inside the lockers were bags with a substance that resembled methamphetamine, 12 pills, and a scale. A deputy sheriff testified that the lockers would not have been searched had they not found the keys to the lockers in defendant's possession.

---

[1] Pursuant to the applicable standard of review discussed below, we state the facts in the light most favorable to the prosecution as the prevailing party. (*People v. Zamudio* (2008) 43 Cal.4th 327, 342 [75 Cal.Rptr.3d 289, 181 P.3d 105].) The facts are taken from the hearing on the motion to suppress evidence.

[2] Penal Code section 4575, subdivision (a) provides that "Any person in a local correctional facility who possesses a wireless communication device, including, but not limited to, a cellular telephone, pager, or wireless Internet device, who is not authorized to possess that item is guilty of a misdemeanor, punishable by a fine of not more than one thousand dollars ($1,000)."

B.  *Procedural Background*

The District Attorney of Los Angeles County filed an information charging defendant with three counts of possession of a controlled substance in a jail (Pen. Code, § 4573.6), one count of possession for sale of a controlled substance (Health & Saf. Code, § 11378), and three counts of bringing drugs into a jail (Pen. Code, § 4573). Defendant pleaded not guilty, and filed a motion to suppress evidence pursuant to Penal Code section 1538.5. The trial court denied defendant's motion. Pursuant to a plea agreement, defendant changed his plea to the count charging him with possession for sale of a controlled substance to no contest, and the remaining counts were dismissed. The trial court suspended the imposition of a sentence and placed defendant on three years' probation.

C.  *Motion to Suppress*

Defendant by his motion to suppress evidence pursuant to Penal Code section 1538.5, sought to suppress evidence of "all items found inside the locker(s)" contending they were seized without probable cause or a warrant. At the hearing, the prosecutor argued that the search constituted an administrative search—a valid warrantless search. In addition to arguing that the search was a valid administrative search, the prosecutor contended that the search also was valid because it was conducted in conjunction with defendant being arrested.

The trial court denied defendant's motion, stating, "The question is whether common habits in the use of property result in a reasonable expectation of privacy in a given situation. [¶] . . . It . . . is reasonable to infer [that the jail rules] were established to, among other things, prevent escape. [Defendant] was put on notice when he entered the facility that by entering, he voluntarily consented to be searched. His expectation of privacy was thus decreased. And the court finds no constitutional infirmity in what happened here. [¶] The deputy's probable cause upon seeing [defendant] with a camera to believe that the rules of the facility had been violated, the subsequent search and the subsequent seizure of the subject items were all, in this court's mind, within the requirements of the constitution." On appeal, the Attorney General contends only that the search was a valid warrantless administrative search, and does not argue the search was valid because it was conducted incident to defendant's arrest.

## DISCUSSION

Defendant does not challenge the validity of the warrantless search of his person and the deputy's removal of the locker keys from his pocket, but

rather contends that the subsequent warrantless search of the lockers violated his rights under the Fourth Amendment to the United States Constitution because the lockers were not subject to an administrative search. Defendant "notes" that the trial court did not validate the search of the lockers as an administrative search. But even if the trial court did not, "[a] reviewing court will uphold a judgment if it is correct for any reason ' "regardless of the correctness of [its] grounds . . . ." [Citation.] "It is judicial action and not judicial reasoning which is the subject of review . . . ." ' [Citation.]" (*People ex rel. Gallo v. Acuna* (1997) 14 Cal.4th 1090, 1119, fn. 4 [60 Cal.Rptr.2d 277, 929 P.2d 596].)

## A. Standard of Review

"The standard of appellate review of a trial court's ruling on a motion to suppress is well established. We defer to the trial court's factual findings, express or implied, where supported by substantial evidence. In determining whether, on the facts so found, the search or seizure was reasonable under the Fourth Amendment, we exercise our independent judgment. [Citations.]" (*People v. Glaser* (1995) 11 Cal.4th 354, 362 [45 Cal.Rptr.2d 425, 902 P.2d 729]; see *People v. Jenkins* (2000) 22 Cal.4th 900, 969 [95 Cal.Rptr.2d 377, 997 P.2d 1044].) In determining whether substantial evidence supports the trial court's findings, "[i]f there is conflicting testimony, we must accept . . . the version of events most favorable to the People, to the extent the record supports them." (*People v. Zamudio, supra*, 43 Cal.4th at p. 342.)

## B. Analysis

### 1. Contentions

Defendant contends that because he was unlawfully arrested any search conducted incident to the arrest was improper and, in any event, a search of the lockers incident to arrest was improper because they were not located within defendant's immediate control. The Attorney General does not address these contentions but contends the search of the lockers was a valid administrative search.

Defendant argues that typically an administrative search may be conducted without a warrant only when there is a legitimate emergency or consent to the search has been given (*Michigan v. Tyler* (1978) 436 U.S. 499, 509 [56 L.Ed.2d 486, 98 S.Ct. 1942]; *See v. City of Seattle* (1967) 387 U.S. 541, 545 [18 L.Ed.2d 943, 87 S.Ct. 1737]; *Ingersoll v. Palmer* (1987) 43 Cal.3d 1321, 1332–1333, 1333–1334 [241 Cal.Rptr. 42, 743 P.2d 1299]), which conditions did not exist here. He contends that the search of the lockers was improper because he did not have notice that they were subject to being

searched. Defendant asserts that he had a reasonable expectation of privacy in using the lockers because the signs outside the entrance to the visitors center did not state that the lockers located outdoors were subject to being searched, he did not need permission from a jail representative to use the lockers, and the lockers were locked. Defendant also argues that the search of the lockers was intended to find evidence of a crime, and therefore was improper without a warrant.

## 2. General Principles

■ The Fourth Amendment to the United States Constitution guarantees freedom from unreasonable search and seizure. (U.S. Const., 4th Amend.; U.S. Const., 14th Amend.; *People v. Rogers* (2009) 46 Cal.4th 1136, 1156 [95 Cal.Rptr.3d 652, 209 P.3d 977]; see also Cal. Const., art. I, §§ 13, 15.) Evidence obtained in violation of this right is inadmissible in a criminal trial. (*Mapp v. Ohio* (1961) 367 U.S. 643, 654–655 [6 L.Ed.2d 1081, 81 S.Ct. 1684].) A defendant may make a motion to suppress such evidence under Penal Code section 1538.5. "Because a warrantless . . . search and seizure is presumptively unreasonable under the Fourth Amendment [citation], the government bears the burden of establishing that exigent circumstances or another exception to the warrant requirement justified the entry. [Citation.]" (*People v. Rogers, supra*, 46 Cal.4th at p. 1156.)

"The touchstone for all issues under the Fourth Amendment and article I, section 13 of the California Constitution is reasonableness. [Citations.]" (*Ingersoll v. Palmer, supra*, 43 Cal.3d at p. 1329.) "The test of reasonableness under the Fourth Amendment is not capable of precise definition or mechanical application." (*Bell v. Wolfish* (1979) 441 U.S. 520, 559 [60 L.Ed.2d 447, 99 S.Ct. 1861].) " 'Reasonableness . . . is measured in objective terms by examining the totality of the circumstances' [citation], and 'whether a particular search meets the reasonableness standard " 'is judged by balancing its intrusion on the individual's Fourth Amendment interests against its promotion of legitimate governmental interests.' " ' [Citations.]" (*People v. Robinson* (2010) 47 Cal.4th 1104, 1120 [104 Cal.Rptr.3d 727, 224 P.3d 55]; see *Bell v. Wolfish supra*, 441 U.S. at p. 559 ["Courts must consider the scope of the particular intrusion, the manner in which it is conducted, the justification for initiating it, and the place in which it is conducted."].)

■ "An administrative or regulatory search is one 'conducted as part of a general regulatory scheme in furtherance of an administrative purpose, rather than as part of a criminal investigation to secure evidence of crime.' [Citation.] Such searches are permissible under the Fourth Amendment 'though not supported by a showing of probable cause directed to a particular place or person to be searched.' [Citations.]" (*Estes v. Rowland* (1993) 14

Cal.App.4th 508, 522 [17 Cal.Rptr.2d 901].) "Even if the searches were authorized as regulatory searches, the court [must] . . . analyze the manner in which the searches were conducted to insure constitutional safeguards were being met." (*Id.* at p. 523.) "In assessing the reasonableness of an administrative search we must ' "balanc[e] the need to search against the invasion the search entails." ' [Citation.]" (*Id.* at p. 523.) Whether there is a reasonable expectation of privacy, "we must consider 'first that a person have exhibited an actual (subjective) expectation of privacy and second, that the expectation be one that society is prepared to recognize as "reasonable." ' [Citation.]" (*U.S. v. Hitchcock* (9th Cir. 1972) 467 F.2d 1107, 1108.)

■ Administrative searches often apply to businesses subject to government regulation. The court in *Ingersoll v. Palmer, supra,* 43 Cal.3d at pages 1332–1333 stated, "Some industries are so heavily regulated that government inspections are held constitutionally permissible, without notice, warrant, or individualized suspicion of wrongdoing. [Citations.] Business owners in the heavily regulated industries are presumed to know that they are subject to the periodic inspections which are specified by and regularly carried out pursuant to enabling legislation." There have been different rationales upon which administrative searches are based. The court in *People v. Maikhio* (2011) 51 Cal.4th 1074 [126 Cal.Rptr.3d 74, 253 P.3d 247], acknowledged that the United States Supreme Court has at times relied upon the "implied consent" theory as a basis for its administrative inspection decisions, but the court stated that the high court's "more recent decisions have usually described the effect of heavy or close regulation of a business or activity . . . as diminishing an individual's or business's reasonable expectation of privacy . . . rather than by reference to implied consent." (*Id.* at p. 1093, fn. 8, citations omitted.) The court therefore "[f]ollow[ed] the Supreme Court's current approach . . . [and] consider[ed] the effect of the state's close regulation of fishing and hunting upon an angler's or hunter's reasonable expectation of privacy." (*Ibid.*)

"Although there is no 'talisman' that determines whether society will find a person's expectation of privacy reasonable, a court may consider . . . where the search takes place . . . [and] our societal understanding that certain places deserve more protections than others . . . . [Citations.]" (*Trujillo v. City of Ontario* (C.D.Cal. 2006) 428 F.Supp.2d 1094, 1103, fn. omitted.) "[T]he extent to which the Fourth Amendment protects people may depend upon where those people are." (*Minnesota v. Carter* (1998) 525 U.S. 83, 88 [142 L.Ed.2d 373, 19 S.Ct. 469].)

### 3. *Proper Administrative Search*

■ Because of the nature of a jail or prison, a visitor to those institutions should have a reduced expectancy of privacy. As noted by one court, "the

searches with which we are here concerned are not taking place in airports or on public streets, but on the premises of a maximum security prison. As the United States Supreme Court has recognized, 'central to all other corrections goals is the institutional consideration of internal security within the corrections facilities themselves.' [Citation.]" (*Estes v. Rowland, supra*, 14 Cal.App.4th at p. 537.) "Because of the character of prisoners and the nature of imprisonment, corrections facilities are volatile places, brimming with peril, places where security is not just an operational nicety but a matter of life or death importance. [Citation.] That is why the Supreme Court has decided that even when a prison restriction or practice 'infringes a specific constitutional guarantee, . . . the practice must be evaluated in the light of the central objective of prison administration, safeguarding institutional security.' [Citation.] [¶] . . . 'That which would be unreasonable in the outside world may be indispensable within a prison.' [Citation.] . . . 'Prison authorities have both the right and the duty by all reasonable means to see to it that visitors are not smuggling weapons or other objects which could be used in an effort to escape or to harm other prisoners.' [Citation.]" (*U.S. v. Prevo* (11th Cir. 2006) 435 F.3d 1343, 1346.) As a result of the obvious need for a jail to maintain security,[3] defendant was presumed to know that upon entering jail property he and his belongings were subject to search, and therefore he implicitly consented to the search or had a reduced expectation of privacy.

Defendant did not have a reasonable expectation of privacy with respect to possessions he placed in a locker on the jail property. Although law enforcement employees and jail employees are differently situated than jail visitors, cases[4] holding that searches of the employees' lockers were proper suggest that others who store goods in lockers on jail property should have no expectation of privacy with respect to those lockers.

Although defendant did not need permission from a jail representative to use the lockers and the lockers were locked, the jail, which controlled the lockers, made them available to defendant on jail property. A deputy sheriff

---

[3] The Men's Central Jail Public Information Reference Guide (<http://www.lasdhq.org/divisions/custody/mcj/graphics/MCJPublicInfoRefGuide.PDF> [as of Sept. 29, 2011]), promulgated in accordance with California Code of Regulations, title 15, section 1062, provides that for visitors "[n]o cameras, radios[,] cell phones, purses, briefcases, backpacks or recording devices [are] allowed; . . . and ALL visitors are subject to search."

[4] See, e.g., *People v. Tidwell* (1971) 133 Ill.App.2d 1 [266 N.E.2d 787, 790, 792] (the "basic right of access to the locker" used by the jail guard was with the jail administration and not the jail guard; the jail administration assigned the lockers to the guards and the lockers were subject to search at any time); *Shaffer v. Field* (C.D.Cal. 1972) 339 F.Supp. 997, 1003 (a deputy sheriff did not have a reasonable expectation of privacy in the locker used by him because it was owned and assigned to him by the sheriff's department, the sheriff's department kept a master key and combination to all lockers, and the sheriff's department could change the lockers and locks at will).

testified at the preliminary hearing that the lockers were "right in front of our visiting lobby, and [we are] responsible for maintaining the security of those lockers."[5]

■ A "pat-down" search of a prison visitor may be proper (*People v. Whisnant* (1981) 103 Mich.App. 772 [303 N.W.2d 887, 891]), and as stated *ante*, defendant does not challenge the validity of the warrantless search of his person. A prison visitor's private vehicle may be searched without requiring a reasonable suspicion that the visitor was carrying contraband. (*Mathis v. Appellate Department* (1972) 28 Cal.App.3d 1038, 1040 [105 Cal.Rptr. 126]; *Spear v. Sowders* (6th Cir. 1995) 71 F.3d 626, 633; *Romo v. Champion* (10th Cir. 1995) 46 F.3d 1013, 1017–1018.) Because such searches are permissible, defendant could not exclude from detection items otherwise subject to discovery during such routine and valid searches by placing those items in lockers provided to defendant by the jail on jail property. The purpose of the locked lockers was to secure items from others, including jail visitors, not to insulate such items from searches by jail personnel.

■ If formal notice was required, the sign above the entrance to the visitors center notified defendant prior to the search of the lockers that by entering the visitors center, he was subject to the laws affecting a custody facility and that he and his possessions were subject to search at any time. Although the lockers were located outdoors and the visitors center was indoors, the lockers were only approximately 41 feet away from the sign that specifically advised defendant that his possessions were subject to search. With this warning, defendant could have, but did not, turn back. Instead, he entered the visitors center with no expectation of privacy, and in effect, consented to the search of his person and his possessions on the premises. There is no indication that jail locker searches at the Men's Central Jail in Los Angeles have been conducted in an overly intrusive manner. Thus, the search of the jail lockers under the circumstances was a proper administrative search.

### 4. *Justification*

Irrespective of whether a search of the lockers is a proper administrative search in general, the discovery of the violation of the institution's rules justified the search here. Possessing a camera while visiting a prisoner in violation of jail rules notwithstanding a clear and visible warning that cameras were not allowed in the visitors center, created justifiable security concerns that necessitated a further search of defendant and his belongings,

---

[5] Contrary to defendant's contention, even if relevant, the record does not reflect that a third party controlled the lockers.

including those belongings in the lockers. The jail's rule prohibiting cameras in the visitors center was a reasonable security regulation. As the Attorney General states, "It is common sense that the [jail] authorities would not want inmates' visitors to have detailed photographs of the jail, as this information could help them sneak in contraband or aid escape." The search of the lockers also was not as invasive as a strip search of prison visitors, which has been deemed justified based on a reasonable suspicion of the existence of contraband. (*Estes v. Rowland, supra*, 14 Cal.App.4th at p. 532.) Even if a search of the lockers could be deemed particularly invasive, akin to a strip search, defendant's violation of the institution's posted rules by possessing the camera in the visitors center created a reasonable suspicion justifying the search.

As noted, defendant had a reduced expectation of privacy by visiting a secure jail facility. He ignored the posted rule prohibiting him from bringing a camera into the visitors center, although he took the time to place other belongings in the lockers on jail property. Once the deputy sheriff saw that defendant was in blatant violation of a reasonable security rule, any expectation of privacy defendant had was far outweighed by the jail's need to determine if defendant was engaged in any other conduct that might threaten the security of the facility.

### 5. *No Evidence of Improper Purpose*

■   Defendant also contends that the search of the lockers was improper because it was the deputy sheriff's intent to search the lockers to conduct an investigation to obtain evidence of a crime. As noted above, searches for an administrative purpose, "rather than as part of a criminal investigation to secure evidence of crime," can be permissible even though not supported by probable cause. (*People v. Hyde* (1974) 12 Cal.3d 158, 165 [115 Cal.Rptr. 358, 524 P.2d 830].) A warrantless administrative search may not, however, be a "pretext" for obtaining evidence of the violation of the penal laws. (*New York v. Burger* (1987) 482 U.S. 691, 716–717, fn. 27 [96 L.Ed.2d 601, 107 S.Ct. 2636]; see *Whren v. United States* (1996) 517 U.S. 806, 811–812 [135 L.Ed.2d 89, 116 S.Ct. 1769], citing *New York v. Burger, supra*, 482 U.S. at pp. 716–717, fn. 27; *People v. Valenzuela* (1999) 74 Cal.App.4th 1202, 1209 [88 Cal.Rptr.2d 707].)

In support of his contention, defendant relies upon the statement made in the deputy sheriff's report that "my partner . . . , incident to arrest, searched [defendant's] person and retrieved two locker keys." Defendant also relies on the deputy sheriff's testimony that the lockers would not have been searched had the deputies not found the keys to the lockers in defendant's possession.

Although the deputy sheriff stated the search of defendant's person was incident to defendant's arrest, there is no evidence to support defendant's assumption that the search of the lockers was part of a criminal investigation to secure evidence of a crime. Just because the deputy sheriff searched the lockers after finding the locker keys in defendant's possession does not necessarily mean that the search of the lockers was intended to find evidence of a crime. Rather, the discovery of the two locker keys merely indicated that defendant had stored items in the lockers. This discovery resulted in a search of the lockers, which can be viewed reasonably as an administrative search.

■ *People v. Calvert* (1993) 18 Cal.App.4th 1820 [23 Cal.Rptr.2d 644], involved police officers from an auto theft strike unit who conducted an administrative search of the defendant's automobile repair and sales shop pursuant to Vehicle Code section 2805, "which authorizes inspections of automobile repair shops and new or used car lots to examine the title or registration of vehicles and vehicle components for the purpose of locating stolen vehicles." (*People v. Calvert, supra*, 18 Cal.App.4th at p. 1826.) During the inspection, the officers discovered illegal drugs. The court concluded that the evidence did not support the defendant's contention that the administrative search was a pretext. (*Id.* at p. 1831.) The court also stated that "so long as the officers had a proper justification for the [administrative] search—here a Vehicle Code section 2805 inspection—it is irrelevant the officers may have also subjectively hoped to find evidence of other crimes. [Citation.]" (*Id.* at p. 1831.)

Defendant cites *People v. Valenzuela, supra*, 74 Cal.App.4th 1202, labeling as dictum the court's language in *People v. Calvert, supra*, 18 Cal.App.4th at page 1831 that the officers' subjective intent to conduct an administrative search is irrelevant if they had proper justification for the search. (*People v. Valenzuela, supra*, 74 Cal.App.4th at p. 1209, fn. 5.) Whether or not the deputy sheriff's subjective intent in conducting the administrative search of the lockers is relevant, there is no evidence suggesting that the search was part of "a criminal investigation to secure evidence of crime." (*People v. Hyde, supra*, 12 Cal.3d at p. 165; see *New York v. Burger, supra*, 482 U.S. at pp. 716–717, fn. 27.)

## C. *Conclusion*

The administrative search of the lockers was proper. The trial court did not err by its order denying the motion to suppress evidence.

## DISPOSITION

The judgment is affirmed.

Armstrong, Acting P. J., and Kriegler, J., concurred.

Appellant's petition for review by the Supreme Court was denied December 21, 2011, S197669. Werdegar, J., did not participate therein.