Filed 6/18/14  Nansen v. City of South Pasadena CA2/2

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| MARK NANSEN et al.,<br><br>Plaintiffs and Appellants,<br><br>v.<br><br>CITY OF SOUTH PASADENA et al.,<br><br>Defendants and Respondents. | B248711<br><br>(Los Angeles County<br>Super. Ct. No. BC493250) |

APPEAL from a judgment of the Superior Court of Los Angeles County.  Susan Bryant-Deason, Judge.  Affirmed.

Marvin L. Rudnick for Plaintiffs and Appellants.

Jones & Mayer, James R. Touchstone and Denise L. Rocawich, for Defendants and Respondents.

\* \* \* \* \* \*

1

Appellants, Mark and Roberta Nansen, filed a complaint against respondents, City of South Pasadena, Transtech Engineering Inc., Marlon Ramirez and William Reed (hereinafter collectively referred to as City) alleging, among other things, that their civil rights were violated when City's employees trespassed on appellants' private property to determine whether they were in compliance with local building codes. The trial court granted a special motion to strike after concluding the complaint arose out of a protected activity within the meaning of the anti-SLAPP (Strategic Lawsuit Against Public Participation) statute (Code Civ. Proc.,[1] § 425.16) and that appellants failed to establish a likelihood of prevailing on the merits. This appeal challenges that ruling and the trial court's refusal to rule on a motion for disqualification of counsel on the ground it was rendered moot by the ruling on the special motion to strike. We affirm the judgment in all respects.

FACTUAL AND PROCEDURAL BACKGROUND

**The Complaint and Other Pleadings**

The complaint contained causes of action for: trespass; civil rights violations; negligent supervision; conspiracy; and intentional infliction of emotional distress. The complaint alleged that appellants reside in the City of South Pasadena, where they own their home as well as an adjacent lot. Ramirez is employed by City as a community improvement coordinator and code enforcement officer. Transtech Engineering (Transtech), which is Reed's employer, is a consultant for City's Planning and Building Department.

The complaint further alleged that, on October 8, 2009, Ramirez and Reed entered appellants' gated home and property without consent to measure and take pictures of their yard and retaining walls. The trespass was established by a series of e-mails between City officials, which showed that Ramirez and Reed entered the property "in

---

[1]    All further statutory references are to the Code of Civil Procedure unless otherwise specified.

2

order to conduct an official inspection of their real property," and had trespassed on the property multiple times. City then engaged in actions designed to cover up the trespass by omitting relevant and material e-mails and "staging evidence."

Appellants further alleged that on October 9, 2009, they reported the trespass to the City Manager, John Davidson. City Attorney, Richard Adams, was apprised of appellants' complaint about the trespass shortly thereafter. City's Planning and Building Department supervisor, David Watkins, and Craig Melicher, one of Transtech's employees, made comments regarding appellants' property and the entry onto it by Ramirez and Reed.

City is further accused of misrepresenting the record to gain unlawful access to the property in an application for an inspection warrant. Ramirez, who was in charge of inspecting appellants' property, allegedly wrote in an e-mail on March 18, 2011: "the notice will include language that the violation of the second stop work order is a misdemeanor and will result in legal action by [City]. At the same time, the City Prosecutor will file a misdemeanor complaint with the Superior Court. We pretty much have [appellants'] right where we want them." City used its police department to intimidate appellants by having an officer come to appellants' residence to tell them there was a "stop work" order when no construction was taking place.

On May 3, 2011, City requested appellants appear at City Hall to discuss the stop work order of March 23, 2011, without advising appellants that City had already decided to prosecute appellants. When appellants' counsel advised City that appellants would not make a statement, City threw them out of the meeting "denying them their liberty right to self-incrimination and property to protect their home." On July 25, 2011, City filed a misdemeanor complaint against appellants which alleged numerous building code violations. City allegedly initiated the prosecution because appellants complained about the trespass and to cover up the trespass "including engaging in a conflict of interest between their prosecutorial and enforcement authorities to further their wrongful conduct."

3

On December 13, 2012, City answered the complaint and moved to strike punitive damages requests. Appellants filed a notice of non-opposition to the motion to strike punitive damages.

On December 26, 2012, appellants moved to disqualify City's counsel from representing City on the ground Adams, who worked for the law firm representing City, is also the City Attorney of City. Adams allegedly was a party to, or otherwise conspired with City to conceal the trespass thereby denying appellants the right to make a claim upon City.

**The Special Motion to Strike**

On January 7, 2013, respondents filed a special motion to strike the complaint, on behalf of all named defendants, on the ground the action arose from citizen reports of potential violations of the law and subsequent code enforcement proceedings which are protected by the anti-SLAPP provisions. Respondents argued that appellants could not show a probability of prevailing on the merits on the grounds of privilege, immunity, and failure to comply with the Tort Claims Act (Gov. Code, § 810 et seq.). Respondents further asserted that appellants could not establish a probability of prevailing because former regulation 104.2.3 of the California Building Code, which is embodied in Title 24 of the California Code of Regulations, authorizes a building official to enter and inspect property when there is a reasonable belief that the property is so hazardous, unsafe or dangerous that immediate inspection is required. [2]

In support of the special motion to strike, respondents produced evidence that appellants had never filed a tort claim with City. There was an ongoing code enforcement investigation of appellants between October 2009 and 2012. There were repeated code enforcement actions taken against plaintiffs, including the issuance of

[2] Future references to regulations are to the California Code of Regulations. Respondents refer to a former version of right of entry provision in the California Building Code numbered as regulation 104.2.3. Since 2010, the right of entry provision has been renumbered and is located in the Building Code at regulation 104.6.

numerous stop orders, the application for and the obtaining of an inspection warrant, and the prosecution of misdemeanor charges for violations of the City Municipal Code. Ramirez's duties as the Community Improvement Coordinator include inspecting and determining whether there are municipal code violations of private premises. Reed was employed by City as a building inspector through a contractual agreement with Transtech Engineering.

The October 2009 investigation of appellants' property began after City received multiple complaints from appellants' neighbors that work was being done on appellants' property without permits. In response to the multiple complaints, Ramirez and Reed drove to appellants' property and parked in the front of the vacant lot adjacent to appellants' property to investigate whether appellants were violating any of City's municipal codes or other laws. Ramirez and Reed observed from a neighboring property that a male was digging into the hillside and building retaining walls. A prior search of City files determined that appellants had not sought or obtained either a grading or building permit, which is required to construct a retaining wall.

Ramirez and Reed approached and identified themselves to the worker, who was digging into the hillside. According to Ramirez and Reed, they entered the adjacent lot based on the following factors: multiple complaints about excessive and dangerous grading and retaining wall construction on a hillside without City approvals; the fears of the complaining parties regarding the stability of the hillside and unsafe conditions which affect neighboring properties; the worker was an adult; the adjacent lot was vacant, not fenced and unimproved so there was no access to a front door to knock and contact the property owner; there was active construction on the property including significant grading and unprotected-hazardous cuts into the hillside with no permits or approval for grading, draining and erosion control plans, no soil report, and no hillside development permit; the Building Code defines October 1 through March 31 as the rainy season; and there were no National Pollutant Discharge Elimination System measures or any signs of Best Management Practices being implemented.

Because the worker only spoke Spanish, Ramirez asked in Spanish whether the property owners were home and whether he had a business license. The worker replied "no" and stated that the owners hired him to grade the hillside and build the retaining walls. Ramirez told him that a permit was required for the work and that the owners had not obtained any permits . Ramirez told the worker to cease all work until the owners obtained the proper permits.

After the special motion to strike was filed on behalf of all named defendants, appellants filed an ex parte request to include the consultants in the disqualification motion. The trial court denied the ex parte request. Appellants also filed an opposition to the special motion to strike. They argued they were prevented from filing a tort claim because City failed to cooperate with them and there was spoliation of the evidence by City.

Appellants also asserted that the complaint was brought to seek redress of grievances against City for singling them out for punishment and in retaliation for a dispute with City dating back to October 2008. City further covered up the illegal trespass by violating appellants' constitutional rights including the Fourth Amendment right to be free from unlawful search of their property. Appellants contended that the anti-SLAPP statute did not apply because the complaint did not arise from free speech activities or from petitioning to government. Rather, the complaint was based on the illegal trespass onto their property. The inspectors did not have a reasonable belief that the property was so hazardous, unsafe or dangerous that it required immediate inspection.

Appellants' counsel filed an unsigned declaration, which purported to authenticate a number of documents relied on by appellants in support of the opposition. Some of the documents referenced a different incident occurring on November 14, 2008, when Reed entered the property and took pictures of appellants' property and issued a stop work order regarding building retaining walls on appellants' adjoining hillside backyard lot. The November 2008 notice was retracted after appellants complained to the City Manager and the building inspector supervisor about an illegal trespass on the property.

6

Appellant, Roberta Hansen, declared that the City Manager told her in Watkins's presence in December 2008 that the November entry was illegal. The City Manager instructed Watkins to apologize to Roberta and to order the retraction.

The trial court sustained evidentiary objections to counsel's unsigned declaration and Roberta's statements concerning the December 5, 2008 meeting.[3] The court granted the special motion to strike and placed the remaining motions off calendar as moot. Appellants filed this timely appeal from the judgment striking their complaint in its entirety.

## DISCUSSION

### I. Special Motion to Strike Standards

Section 425.16, subdivision (a) states: "The Legislature finds and declares that there has been a disturbing increase in lawsuits brought primarily to chill the valid exercise of the constitutional rights of freedom of speech and petition for the redress of grievances. The Legislature finds and declares that it is in the public interest to encourage continued participation in matters of public significance, and that this participation should not be chilled through abuse of the judicial process. To this end, this section shall be construed broadly." Such a lawsuit may be dismissed under section 425.16, subdivision (b)(1) which provides: "A cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court determines that

---

[3]    Respondents have raised an issue as to whether we can consider any evidence to which the trial court sustained objections because appellants' opening brief did not challenge the rulings. We do not consider evidence to which the trial court sustained objections when the rulings are not challenged in the opening brief. (*Guz* v. *Bechtel National, Inc.* (2000) 24 Cal.4th 317, 334.)

For the first time in the reply brief, appellants assert the failure to consider evidence based on counsel's inadvertent failure to sign his declaration until the same day of the hearing is a basis for remand. We need not consider appellants' request for remand on this ground which was asserted for the first time in the reply brief. (*Mt. Hawley Ins. Co. v. Lopez* (2013) 215 Cal.App.4th 1385, 1426.)

7

the plaintiff has established that there is a probability that the plaintiff will prevail on the claim."

Section 425.16, subdivision (e) states: "As used in this section, 'act in furtherance of a person's right of petition or free speech under the United States or California Constitution in connection with a public issue' includes: (1) any written or oral statement or writing made before a legislative, executive, or judicial proceeding, or any other official proceeding authorized by law, (2) any written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law, (3) any written or oral statement or writing made in a place open to the public or a public forum in connection with an issue of public interest, or (4) any other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest."

Section 425.16 is to be construed broadly so as to protect the constitutional rights of petition and free speech. (§ 425.16, subd. (a); *Kibler v. Nothern Inyo County Local Hospital Dist.* (2006) 39 Cal.4th 192, 199; *Briggs v. Eden Council for Hope & Opportunity* (1999) 19 Cal.4th 1106, 1119–1121.) In deciding whether to grant a special motion to strike, the trial court must consider two components. First, the moving party has the initial burden of establishing a prima facie case that the plaintiff's cause of action arose out of the defendant's actions in the furtherance of the rights of petition or free speech. (§ 425.16, subd. (b)(1); *Flatley v. Mauro* (2006) 39 Cal.4th 299, 314 (*Flatley*); *Rusheen v. Cohen* (2006) 37 Cal.4th 1048, 1056 (*Rusheen*).) Second, if defendant establishes the first prong, the burden shifts to plaintiff to establish a probability that he or she will prevail on the merits. (§ 425.16, subd. (b)(1); *Flatley*, *supra*, 39 Cal.4th at p. 314; *Rusheen, supra*, 37 Cal.4th at p. 1056.) The plaintiff meets this burden by stating and substantiating a legally sufficient claim with a prima facie showing of facts to sustain a favorable judgment if the submitted evidence is credited. (*Oasis West Realty, LLC v. Goldman* (2011) 51 Cal.4th 811, 820 (*Oasis West Realty*).) Courts do not weigh the

8

evidence; instead, evidence which is favorable to a plaintiff is accepted as true while a defendant's evidence is only considered to determine if the claim is defeated as a matter of law. (*Flatley*, *supra*, at pp. 323, 326.) We review the order granting the special motion to strike de novo. (*Oasis West Realty, supra,* at p. 820.)

## II. A Protected Activity

The parties dispute whether respondents established the first prong of the test that the claims arose from protected speech or petitioning activity. City is correct that this case is similar to *Levy v. City of Santa Monica* (2004) 114 Cal.App.4th 1252, 1255-1256 (*Levy)*, where a neighbor complained to local authorities that homeowners built a backyard playhouse that did not comply with the City of Santa Monica's building code. After the City of Santa Monica issued a notice of violation about the playhouse, the homeowners sued the neighbors and the City of Santa Monica. (*Levy, supra*, 114 Cal.App.4th at pp. 1255-1257.) The lawsuit sought damages under a civil rights theory, injunctive relief and a declaration that the playhouse conformed to the applicable zoning ordinance. (*Id*. at pp. 1257-1258.) The trial court denied the City of Santa Monica's special motion to strike the complaint ruling that the anti-SLAPP statute was inapplicable. (*Id*. at p. 1257.) *Levy*, *supra*, reversed the order denying the special motion to strike concluding that the City of Santa Monica met its burden of showing that the act of the neighbors contacting the planning staff was a protected activity of petitioning to a government. (*Id*. at pp. 1258-1259.) Similarly in this case, the complaints involve the neighbors' right to petition to an authorized government agency to determine whether appellants were in compliance with building requirements, which is protected by the First Amendment. (*Id.* at pp. 1258-1259.)

Moreover, City's *investigation* based on the complaints is a protected activity because it is an official proceeding authorized by local ordinances and by Regulation 104.6. (§ 425.16, subd. (e)(2); *Braun v. Chronicle Publishing Co.* (1997) 52 Cal.App.4th 1036, 1049 (*Braun*) [an investigative audit by the State Auditor is an official proceeding authorized by law]; see also *Hansen v. Deptartment of Corrections &*

*Rehabilitation* (2008) 171 Cal.App.4th 1537, 1544-1545 [internal investigation].)  All the claims in this case clearly rest upon City's conduct during the official proceeding to determine whether appellants were in violation of local building codes.  Thus, City met its burden of showing the complaint concerns protected activity.

Contrary to appellants' claims, City's refusal to identify by name the neighbors, who petitioned City about the unauthorized building, does not change the nature of the proceeding from official to an unofficial or nonpublic activity.  (See *Braun, supra,* 52 Cal.App.4th at p. 1049.)

Appellants contend, however, there is no protected speech or petitioning activity because the complaint is based on trespass to property, which is an unprotected activity.  In evaluating whether the anti-SLAPP statute applies, courts consider "the principal thrust or gravamen" of the cause of action upon which the claims are made against a defendant.  (*City of Cotati v. Cashman* (2002) 29 Cal.4th 69, 78.)  When a cause of action arises out of both protected and unprotected conduct, the issue becomes whether the free speech or petition right is only incidental to the cause of action.  (*Freeman v. Schack* (2007) 154 Cal.App.4th 719, 727.)  "Where a cause of action is based on both protected activity and unprotected activity, it is subject to section 425.16 '"unless the protected conduct is 'merely incidental" to the unprotected conduct.'"' [Citations.]"  (*Wallace v. McCubbin* (2011) 196 Cal.App.4th 1169, 1187.)

In this case, appellants asserted that respondents illegally trespassed on their property to ascertain whether appellants were in violation of building codes.  All the claims in the complaint are predicated on the theory that appellants were injured by the trespass to investigate whether appellants were violating the building codes.  Respondents produced evidence that the investigation began after multiple complaints were made from appellants' neighbors about excavation on a hillside for which permits were required.  After receiving the complaints, a search of public records revealed that appellants did not obtain permits for the work that was being done.  The inspectors entered the property to determine whether hazardous work was being performed on the property without

10

requisite permits.  Thus, the complaint raises issues of both protected and unprotected conduct in which the protected activity is not merely incidental to the unprotected activity.

### III.  The Probability of Prevailing

Because appellants established the first prong, the burden shifted to appellants to establish a probability they will prevail on the merits of the various causes of action. (§ 425.16, subd. (b)(1); *Flatley, supra,* 39 Cal.4th at p. 314.)  Appellants alleged they were injured when City employees inspected appellants' property after making a warrantless entry onto appellants' vacant adjacent lot.  The alleged illegal entry then resulted in stop notices, an inspection warrant and ultimately criminal proceedings against appellants.  Respondents counter that appellants cannot establish a probability of prevailing on any of the causes of action because: appellants failed to comply with the Tort Claims Act (Gov. Code, § 900 et seq.); respondents are immune from suit; respondents had a right of entry on the property; the communications forming the lawsuit are privileged; and none of the evidence offered can be considered by this court.

### A.  The Tort Claims Act prohibits damages for the state law claims.

City is correct that appellants are seeking damages against a public entity under state law without pleading or showing that they complied with the Tort Claims Act. (Gov. Code, § 900 et seq.; *State of California v. Superior Court (Bodde)* (2004) 32 Cal.4th 1234, 1239.)  The failure to present a timely claim to City bars appellants' state law damages claims.  (Gov. Code, §§ 905, 911.2; *City of Stockton v. Superior Court* (2007) 42 Cal.4th 730, 737-738.)  However, claims for civil rights violations under federal statutes are not subject to the Tort Claims Act requirements.  (*Bodde, supra*, 32 Cal.4th at p. 1240; *Williams v. Horvath* (1976) 16 Cal.3d 834, 841.)

### B.  Appellants did not establish a probability of prevailing on the civil rights claims.

Appellants assert their Fourth Amendment Rights under the United States Constitution were violated by the "warrantless trespass" of City employees onto

appellants' vacant lot. "'The touchstone of Fourth Amendment analysis is whether a person has a 'constitutionally protected reasonable expectation of privacy.'" [Citations.] 'What a person knowingly exposes to the public, even in his own home or office, is not a subject of Fourth Amendment protection. [Citation.] But what he seeks to preserve as private, even in an area accessible to the public, may be constitutionally protected.' [Citation.]." (*Robey v. Superior Court* (2013) 56 Cal.4th 1218, 1224 (*Robey*).) In determining whether the search was reasonable, "[c]ourts must consider the scope of the particular intrusion, the manner in which it is conducted, the justification for initiating it, and the place in which it is conduct." (*Bell v. Wolfish* (1979) 441 U.S. 520, 559.) In assessing the reasonableness of an administrative search, it is necessary to balance the need to search against the invasion of personal rights the search entails. (*People v. Boulter* (2011) 199 Cal.App.4th 761, 769.) A reasonable expectation of privacy determination is made by considering whether the person exhibited an actual expectation of privacy and then whether the expectation is one society recognizes as reasonable. (*Ibid.*) In reviewing a trial court's ruling contesting the legality of a search or seizure, we defer to the trial court's factual findings express or implied when they are supported by substantial evidence. (*Robey, supra*, at p. 1223.) The issue of whether the search or seizure was reasonable under the Fourth Amendment of the United State Constitution is reviewed de novo. (*Id.* at p. 1223.)

However, "[t]he Fourth Amendment does not prohibit warrantless searches and seizures, nor does the Fourth Amendment always prohibit warrantless searches and seizures when the defendant previously objected to the search and seizure." (*United States v. Hudspeth* (8th Cir. 2008) 518 F.3d 954, 961, citing *Illinois v. Rodriguez* (1990) 497 U.S. 177, 183.) Instead, the Fourth Amendment protects against unreasonable searches and seizures, "and it is a cardinal principle that 'searches conducted outside the judicial process, without prior approval by judge or magistrate are *per se* unreasonable under the Fourth Amendment—subject only to a few specifically established and well-delineated exceptions.' [Citation.]" (*Mincey v. Arizona* (1978) 437 U.S. 385, 390.) "A

12

long-recognized exception to the warrant requirement exists when 'exigent circumstances' make necessary the conduct of a warrantless search . . . . '"[E]xigent circumstances" means an emergency situation requiring swift action to prevent imminent danger to life or serious damage to property …. There is no ready litmus test for determining whether such circumstances exist, and in each case the claim of an extraordinary situation must be measured by the facts known to the officers.'" (*People v. Lucero* (1988) 44 Cal.3d 1006, 1017; see also *People v. Panah* (2005) 35 Cal.4th 395, 465.) "Warrantless inspections in exigent circumstances are acceptable under the Fourth Amendment." (*Griffith v. City of Santa Cruz* (2012) 207 Cal.App.4th 982, 993 [determining local ordinance which allowed annual administrative searches of all residential properties did not violate Fourth Amendment].) Because warrantless searches are presumptively invalid, the government has the burden of showing exigent circumstances or some other exception justified the entry. (*People v. Rogers* (2009) 46 Cal.4th 1136, 1156; *Boulter, supra,* 199 Cal.App.4th at p. 768.)

Here, appellants claim a warrant was required before the inspectors could enter the vacant lot. Section 1822.50 through 1822.56 set forth the requirements for obtaining an inspection warrant to enter private property.

Respondents argue the warrantless entry onto the adjacent lot was justified under exigent circumstances and based on regulation 104.6. of the California Building Code. Regulation 104.6 provides: "**Right of entry**. Where it is necessary to make an inspection to enforce the provisions of this code, or where the building official has reasonable cause to believe that there exists in a structure or upon a premises a condition which is contrary to or in violation of this code which makes the structure or premises unsafe, dangerous or hazardous, the building official is authorized to enter the structure or premises at reasonable times to inspect or perform the duties imposed by this code, provided that if such structure or premises be occupied that credentials be presented to the occupant and entry requested. If such structure of premises is unoccupied, the building official shall first make a reasonable effort to locate the owner or other person having charge or control

13

of the structure or premises and request entry. If entry is refused, the building official shall have recourse to the remedies provided by law to secure entry."

Respondents argue that exigent circumstances justified the entry onto the vacant lot because the inspectors had reasonable cause to believe that the property was so hazardous, unsafe or dangerous that it required immediate inspection to safeguard the public health or safety. The record shows that appellants had an unlicensed worker digging and excavating on a hillside and building a retaining wall for which grading permits and plans were necessary. At the time of the inspection, public records revealed that appellants did not have the requisite permits. In addition, City had received multiple complaints from neighbors fearing the hazards of the hillside work. City employees observed from the street work being performed on the hillside for which permits were required but had not been obtained. City employees subsequently entered a vacant, unfenced lot which was adjacent to the property where the hillside work was being performed and spoke to the worker. The adjacent lot was also owned by appellants. While on the adjacent lot, the inspectors identified themselves and asked where the owners were. When the worker indicated the owners were not home, the inspectors ordered the worker to stop work. The inspectors took immediate action, rather, than allowing an unlicensed worker to continue grading on a hillside without requisite permits and plans. The immediate action was reasonable because, if the inspectors had left the scene to obtain a warrant, the unlicensed worker would have continued working and could have destabilized a hillside creating the possibility that neighboring property would be destroyed. We agree with respondents that entry onto the adjacent lot falls within the exigent circumstances exception to a warrant requirement.

**C. Respondents' conduct is subject to privileges and immunities.**

Respondents are also correct that appellants failed to establish a probability of prevailing because respondents' liability for damages is subject to certain privileges and immunities. Civil Code section 47(d) provides an absolute privilege to any statements

14

made in preparation of the code enforcement investigation and prosecution for violations of building codes.

Respondents' conduct is also subject to a number of immunities. Government Code section 815.2, subdivision (a), provides that "[a] public entity is liable for injury proximately caused by an act or omission of an employee of the public entity within the scope of his employment if the act or omission would, apart from this section, have given rise to a cause of action against that employee or his personal representative." By contrast, Government Code section 812.5, subdivision (b)(2), provides that, unless otherwise provided by statute, a public entity is not liable where its employees are immune from liability.

Government Code section 821.6 immunizes a public employee "for injury caused by his instituting or prosecuting any judicial or administrative proceeding within the scope of his employment, even if he acts maliciously and without probable cause." The code enforcement officials are immune from liability for any conduct in issuing the stop notices, investigating the building violations, and instituting enforcement proceedings to ensure compliance with the applicable building codes. (*Ibid*; *Richardson-Tunnell v. Schools Ins. Program for Employees* (2007) 157 Cal.App.4th 1056, 1062-1063.)

Appellants claim injury from the trespass to property. Trespass is the unauthorized entry on the property of another. (*Cobb v. City of Stockton* (2011) 192 Cal.App.4th 65, 73.) Government Code section 821.8 provides: "A public employee is not liable for an injury arising out of his entry upon any property where such entry is expressly or impliedly authorized by law. Nothing in this section exonerates a public employee from liability for an injury proximately cause by his own negligent or wrongful act or omission." We agree with respondents that exigent circumstances and regulation 104.6 authorized the entry due to the hazardous conditions created by the hillside excavation. In addition, Government Code section 820.4 immunizes a public employee from liability for acts or omissions, exercised in due care, in the execution or enforcement of any law. Thus, the inspectors are immune from liability for entering the property after:

15

receiving multiple complaints about the grading and retention wall construction; discovering appellants did not have permits for the work being performed on the hillside; and observing active unpermitted construction on the hillside.

In sum, the trial court properly determined the anti-SLAPP statute was applicable and that appellants failed to establish a likelihood of prevailing on the merits. Accordingly, the trial court properly entered judgment in favor of respondents after striking the complaint in its entirety.

**D. The trial court did not err in determining the disqualification motion was moot.**

After granting the anti-SLAPP statute motion, the trial court determined a motion to disqualify counsel filed by appellants was moot. We find appellants' claim that the trial court erred in refusing to consider the disqualification motion because it was filed prior to the special motion to strike is waived. (Cal. Rules of Court, rule 8.204(a)(1).) Appellants were required to provide citations to applicable legal authority in support of their claim of error; by failing to do so, they have waived the issue. (*Nelson v. Avondale Homeowners Assn.* (2009) 172 Cal.App.4th 857, 862.)

In any event, the purpose of section 425.16 is "to provide for the early dismissal of unmeritorious claims filed to interfere with the valid exercise of the constitutional rights of freedom of speech and petition for the redress of grievances. [Citation.]" (*Club Members for an Honest Election v. Sierra Club* (2008) 45 Cal.4th 309, 315.) The trial court's ruling granting the special motion to strike was a dispositive ruling because it resulted in a dismissal of the complaint on its merits. The issue of disqualification of counsel was rendered moot because "a court ruling can have no practical effect or cannot provide the parties with effective relief." (*Lincoln Place Tenants Assn. v. City of Los Angeles* (2007) 155 Cal.App.4th 425, 454.) Because the trial court's ruling left nothing to resolve, the trial court correctly concluded the disqualification motion was moot.

## DISPOSITION

The judgment striking the complaint is affirmed.  Respondents are awarded their costs on appeal.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS.

_____, J. *

          FERNS

We concur:

_____, P. J.

    BOREN

_____, J.

    ASHMANN-GERST

---

\*     Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

17