88 Cal.Rptr.2d 707 (1999)
74 Cal.App.4th 1202
The PEOPLE, Plaintiff and Respondent,
v.
Lucio C. VALENZUELA, Defendant and Appellant.
No. D031323.
Court of Appeal, Fourth District, Division One.
September 15, 1999.
*708 Howard C. Cohen, under appointment by the Court of Appeal, San Diego, for Defendant and Appellant.
Daniel E. Lungren and Bill Lockyer, Attorneys General, George Williamson, Chief Assistant Attorney General, Gary W. Schons, Assistant Attorney General, Garrett *709 B. Beaumont and Robert M. Foster, Deputy Attorneys General for Plaintiff and Respondent.
HUFFMAN, Acting P.J.
Following denial of his motion to suppress evidence (Pen.Code, § 1538.5), Lucio C. Valenzuela entered a negotiated guilty plea to possessing a controlled substance (Health & Saf.Code, § 11350, subd. (a)) and admitted a strike (Pen.Code, § 667, subds.(b)-(i)). The court sentenced him to 32 months in prison (twice the lower term). Valenzuela now appeals the denial of his suppression motion. We agree with his contention he was stopped on a pretext and therefore reverse the judgment.

THE PEOPLE'S EVIDENCE
For over seven years, the sale and use of controlled substances at The End Zone Bar had posed a problem for the San Diego Police Department. During that period, San Diego Police Sergeant Michael Brogdon had made more than a dozen drug-related arrests there. Brogdon had extensive training on the subject of illicit drugs, had testified as an expert on drug-related issues over 200 times, and had made a total of more than 200 drug-related arrests. His 12-year tenure as a police officer included 5-1/2 years in the narcotics section, a 1-year stint with the walking enforcement campaign against narcotics, and 19 months as a vice detective buying controlled substances in bars and other places subject to regulation by the Department of Alcoholic Beverage Control. Brogdon's latest position was patrol supervisor.
Around 2:15 p.m. on February 6, 1998, Brogdon was outside The End Zone Bar. He saw a taxicab parked in front of the bar. He saw Valenzuela come out of the bar, walk toward the cab, climb in the front passenger's seat, and close the door. Brogdon followed the cab for a short distance and then stopped it.
Brogdon testified that his purpose was to conduct a cab inspection, as he had done over 30 times before. According to Brogdon, vice officers made these inspections daily and patrol officers made them occasionally. On cross-examination, he acknowledged that he initiated the stop "based upon the knowledge of the establishment" although this knowledge was unrelated to whether the cab was licensed or insured.
After the cab stopped, Brogdon approached the passenger's side; asked driver Alvaro Rodriguez for his driver's and cab licenses, registration, and insurance papers; and announced he was conducting a cab inspection. As Rodriguez was retrieving his papers, Brogdon casually asked Valenzuela if he could speak with him. Valenzuela agreed. Brogdon asked him to step out of the cab. Valenzuela complied. Brogdon asked him if he had any form of identification. Valenzuela produced his driver's license. Still speaking casually, Brogdon asked for permission to search him. Valenzuela consented. The search yielded a bag of powder resembling cocaine. Brogdon arrested Valenzuela and handcuffed him. Valenzuela became very unsteady on his feet and nearly passed out. Brogdon held him up and called for paramedics.
After Brogdon handcuffed Valenzuela, Rodriguez gave Brogdon his license, registration, and proof of insurance. Although Rodriguez appeared to be holding all the papers Brogdon had requested, Brogdon did not go through them. Because the handcuffs prevented Valenzuela from removing money from his wallet, Brogdon helped him pay Rodriguez. Brogdon spoke with Rodriguez briefly and then allowed him to leave. Brogdon did not finish the cab inspection, assertedly because his attention was focused on Valenzuela's safety. Brogdon did not recall whether the cab had a medallion on its trunk, which he testified was required for cabs operating "in the county ... as well as the *710 city."[1] He did not look for the medallion, although he positioned his patrol car about 20 to 25 feet behind the taxicab when he stopped it.

DEFENSE EVIDENCE
Rodriguez testified he handed over his papers and Brogdon returned them right away. Brogdon then requested Valenzuela's identification and asked him to get out of the cab. According to Rodriguez, Brogdon never announced he was conducting a cab inspection or said why he wanted to see Rodriguez's papers.

THE TRIAL COURT'S RULING
The court discussed with counsel whether the stop was pretextual but made no express finding on the issue. At the conclusion of argument, the court cited the following cases: United States v. Orito (1973) 413 U.S. 139, 93 S.Ct. 2674, 37 L.Ed.2d 513 (reversing dismissal of charge of knowingly transporting obscene material on common carrier (airplane) in interstate commerce; holding privacy of home does not extend to common carrier and Congress has power to prevent obscene material from entering commerce); People v. McGaughran (1979) 25 Cal.3d 577, 159 Cal.Rptr. 191, 601 P.2d 207 (driver stopped for noncustodial traffic violation and detained for time necessary to complete police functions arising from violation cannot be further detained solely for warrant check); People v. Bell (1996) 43 Cal. App.4th 754, 51 Cal.Rptr.2d 115 (typical traffic stop constitutes detention of passenger; scope of driver's detention lawful at least until officer ticketed him and turned attention to passenger; canine sniff did not exceed scope of passenger's consent to search); People v. Lopez (1989) 212 Cal.App.3d 289, 260 Cal.Rptr. 641 (police request for identification during street encounter is not detention); and Williams v. Superior Court (1985) 168 Cal.App.3d 349, 213 Cal.Rptr. 919 (no justification for prolonging detention or requesting consent to search vehicle because this was not reasonably necessary to officer's performance of duties concerning traffic violation and facts known to him did not support objectively reasonable suspicion petitioners were involved in robberies).
After citing the above cases, the court here stated:
"Based upon the evidence presented here and the applicable cases, the court finds that the cab was lawfully pulled over, and the seizure of the defendant under these circumstances does not contravene the Fourth Amendment. Asking defendant to exit or get out of the car and to produce his identification does not contravene the Fourth Amendment right. There was no unlawful detention in this case.
"In addition, there is nothing in the record to indicate that the defendant did not consent to the search. There is no indication that the defendant's consent to be searched was invalid. It appears to have been freely and voluntarily given."

DISCUSSION

I
Valenzuela contends the stop was pretextual, it did not comply with the cab inspection ordinance, and the ordinance is unconstitutional.
We may easily dispose of the latter two arguments. In the court below, Valenzuela did not argue unconstitutionality and presented no evidence the stop violated the cab inspection ordinance. He is therefore precluded from raising those issues now. (People v. Williams (1999) 20 Cal.4th 119, 130-131, 135-136, 83 Cal. Rptr.2d 275, 973 P.2d 52; People v. Benson (1990) 52 Cal.3d 754, 788, 276 Cal. Rptr. 827, 802 P.2d 330.)
*711 Valenzuela's first contention, however, the asserted pretextual nature of the stop, was the gist of his suppression motion and requires more attention. In reviewing the denial of that motion, we must view the record in the light most favorable to respondent (People v. Aguilar (1996) 48 Cal.App.4th 632, 637, 55 Cal.Rptr.2d 716), uphold all express and implied factual findings of the trial court that are supported by substantial evidence, then independently apply the proper federal constitutional standards to those facts (People v. Williams (1988) 45 Cal.3d 1268, 1301, 248 Cal.Rptr. 834, 756 P.2d 221; People v. Blardony (1998) 66 Cal.App.4th 791, 794, 78 Cal.Rptr.2d 291; People v. Trujillo (1990) 217 Cal.App.3d 1219, 1223-1224, 266 Cal.Rptr. 473).
Our first task is to consider whether the stop here was pretextual, a legal matter we review de novo. (United States v. Hernandez (9thCir.l995) 55 F.3d 443, 446.) We conclude that it was.[2] Sergeant Brogdon was motivated by a desire to approach Valenzuela rather than to conduct a cab inspection. This is borne out by Brogdon's vast experience enforcing drug laws which far exceeded his experience conducting cab inspections; by his acknowledgement that patrol officers conducted such inspections only "occasionally;" by his apparent failure to perform any element of a cab inspection other than obtaining Rodriguez's papers; by his nearly immediate focus of attention on Valenzuela; and, most tellingly, by his admission that he stopped the cab "based upon the knowledge of the establishment." (Cf. People v. Williams, supra, 20 Cal.4th at p. 138, 83 Cal.Rptr.2d 275, 973 P.2d 52.) Having thus concluded that the record compels a finding of pretext, we turn to our second task, determining the legal effect of the pretextual stop.
We begin by considering pretextual police-citizen encounters in the context of criminal law violations. In this realm, pretext is clearly permissible. "Subjective intentions play no role in ordinary, probable-cause Fourth Amendment analysis." (Whren v. United States (1996) 517 U.S. 806, 813, 116 S.Ct. 1769, 135 L.Ed.2d 89.) Thus, in Whren, a traffic stop yielding illegal drugs was valid despite the plainclothes vice officers' subjective motivation because there was probable cause to believe a traffic violation had occurred. (Id. at pp. 808-809, 813, 116 S.Ct. 1769.) Conversely, in Delaware v. Prouse (1979) 440 U.S. 648, 99 S.Ct. 1391, 59 L.Ed.2d 660, where the officer stopped a vehicle on an apparent whim, the traffic stop was unreasonable under the Fourth Amendment because there was no reasonable suspicion[3] a law had been violated. (Id. at pp. 650-651, 663, 99 S.Ct. 1391.) In Scott v. United States (1978) 436 U.S. 128, 98 S.Ct. 1717, 56 L.Ed.2d 168, the petitioners sought to exclude wiretap evidence in a narcotics investigation because the agents had made no effort to comply with the statutory requirement to minimize unauthorized interceptions. (Id. at pp. 130, 135, 138-139, 98 S.Ct. 1717.) The Court rejected this argument, stating: "Subjective intent alone ... does not make otherwise lawful conduct illegal or unconstitutional." (Id. at p. 136, 98 S.Ct. 1717, fn. omitted.)
Contrasted with restraints based on criminal law violations are intrusions exempted from the probable cause requirement *712 such as inventory or administrative searches.[4] (Whren v. United States, supra, 517 U.S. at pp. 811-812, 116 S.Ct. 1769.) In Whren, the petitioners relied on three inventory and administrative search cases disapproving "police attempts to use valid bases of action against citizens as pretexts for pursuing other investigatory agendas": Florida v. Wells (1990) 495 U.S. 1, 110 S.Ct. 1632, 109 L.Ed.2d 1; Colorado v. Bertine (1987) 479 U.S. 367, 107 S.Ct. 738, 93 L.Ed.2d 739; and New York v. Burger (1987) 482 U.S. 691, 107 S.Ct. 2636, 96 L.Ed.2d 601. (Whren v. United States, supra, 517 U.S. at p. 811, 116 S.Ct. 1769.) Wells held "`an inventory search must not be a ruse for a general rummaging in order to discover incriminating evidence.'" (Florida v. Wells, supra, 495 U.S. at p. 4, 110 S.Ct. 1632, cited in Whren v. United States, supra, 517 U.S. at p. 811, 116 S.Ct. 1769, fn. omitted, and in People v. Williams, supra, 20 Cal.4th at pp. 126-127, 137-138, 83 Cal.Rptr.2d 275, 973 P.2d 52.) Burger concluded a warrantless administrative inspection procedure was constitutional, noting it "did not appear to be `a "pretext" for obtaining evidence of ... violation of ... penal laws.'" (New York v. Burger, supra, 482 U.S. at pp. 716-717, fn. 27, 107 S.Ct. 2636, quoted in Whren v. United States, supra, 517 U.S. at p. 811, 116 S.Ct. 1769, fn. omitted.) Bertine upheld an inventory search, noting there was "`no showing that the police, who were following standardized procedures, acted in bad faith or for the sole purpose of investigation.'" (Colorado v. Bertine, supra, 479 U.S. at p. 372, 107 S.Ct. 738, cited in Whren v. United States, supra, 517 U.S. at p. 811, 116 S.Ct. 1769, and in People v. Williams, supra, 20 Cal.4th at p. 126, 83 Cal.Rptr.2d 275, 973 P.2d 52.)
The Whren court concluded these inventory and administrative cases were inapposite to the circumstance before it, a traffic stop: "But only an undiscerning reader would regard these cases as endorsing the principle that ulterior motives can invalidate police conduct that is justifiable on the basis of probable cause to believe that a violation of law has occurred. In each case we were addressing the validity of a search conducted in the absence of probable cause." (Whren v. United States, supra, 517 U.S. at p. 811, 116 S.Ct. 1769, original italics.) The court continued: "Not only have we never held, outside the context of inventory search or administrative inspection ..., that an officer's motive invalidates objectively justifiable behavior under the Fourth Amendment; but we have repeatedly held and asserted the contrary." (Id. at p. 812, 116 S.Ct. 1769.) Thus, the Whren Court distinguished inventory and administrative searches, which do not require probable cause, from stops based on criminal law violations, which require probable cause or some lesser variant. According to Whren, pretext is permissible in the latter context. It is impermissible in the former context according to Florida v. Wells, supra, 495 U.S. at page 4, 110 S.Ct. 1632; Colorado v. Bertine, supra, 479 U.S. at page 372, 107 S.Ct. 738; and New York v. Burger, supra, 482 U.S. *713 at pages 716-717, footnote 27, 107 S.Ct. 2636.[5]
Here, the stop of the taxicab was not based on any criminal law violation. Instead, it arose from Sergeant Brogdon's asserted purpose of conducting a cab inspection which, as discussed above, was a pretext for his true motive: to contact Valenzuela. Thus, the inapplicability of "ordinary, probable-cause Fourth Amendment analysis" (Whren v. United States, supra, 517 U.S. at p. 813, 116 S.Ct. 1769) distinguishes this case from Whren and aligns it with the inventory and administrative search cases prohibiting pretextual police intrusions. We therefore conclude the stop of the taxicab was unreasonable and the trial court erred by denying Valenzuela's suppression motion.

II
While this appeal was pending, the California Supreme Court issued its opinion in People v. Woods (1999) 21 Cal.4th 668, 88 Cal.Rptr.2d 88, 981 P.2d 1019. In Woods, the Supreme Court reversed the suppression of evidence gathered in a search of a probationer's home, where the police officer's sole purpose was to obtain evidence of criminal activity by the probationer's roommate. (Id. at pp. 671-674, 681-682, 88 Cal.Rptr.2d 88, 981 P.2d 1019.) While Woods is a pretext case, it is inapplicable to the instant situation in that it involves a probation search, not an administrative or inventory search. Moreover, the Woods court carefully noted that administrative inspections are not subject to the pretext rule of Whren v. United States, supra, 517 U.S. 806, 116 S.Ct. 1769, 135 L.Ed.2d 89. (People v. Woods, supra, at p. 678, 88 Cal.Rptr.2d 88, 981 P.2d 1019.)

DISPOSITION
Judgment reversed.
O'ROURKE, J., and JOSEPH, J.[*], concur.
NOTES
[1] The events here took place within the City and County of San Diego.
[2] This was not, as respondent suggests, a dual purpose stop, that is, one where "the officer had dual bona fide motives." (United States v. Bowhay (9th Cir.1993) 992 F.2d 229, 231.) "In a pretext case, only the investigative motive is bona fide." (Ibid.)
[3] While "most traffic stops resemble, in duration and atmosphere, the kind of brief detention authorized in Terry [v. Ohio (1968) 392 U.S. 1 [88 S.Ct. 1868, 20 L.Ed.2d 889],]" some are supported by probable cause. (Berkemer v. McCarty (1984) 468 U.S. 420, 439, fn. 29, 104 S.Ct. 3138, 82 L.Ed.2d 317.) Terry sets forth the reasonable suspicion standard, "a less stringent test" than probable cause. (Terry v. Ohio, supra, 392 U.S. at pp. 27, 30, 88 S.Ct. 1868; Delaware v. Prouse, supra, 440 U.S. at p. 654, 99 S.Ct. 1391.)
[4] "An inventory search is the search of property lawfully seized and detained, in order to ensure that it is harmless, to secure valuable items (such as might be kept in a towed car), and to protect against false claims of loss or damage." (Whren v. United States, supra, 517 U.S. at p. 811, fn. 1, 116 S.Ct. 1769, citing South Dakota v. Opperman (1976) 428 U.S. 364, 369, 96 S.Ct. 3092, 49 L.Ed.2d 1000.) "An administrative inspection is the inspection of business premises conducted by authorities responsible for enforcing a pervasive regulatory scheme for example, unannounced inspection of a mine for compliance with health and safety standards." (Whren v. United States, supra, 517 U.S. at p. 811, fn. 2, 116 S.Ct. 1769, citing Donovan v. Dewey (1981) 452 U.S. 594, 599-605, 101 S.Ct. 2534, 69 L.Ed.2d 262.)

Respondent classifies United States v. Villamonte-Marquez (1983) 462 U.S. 579, 103 S.Ct. 2573, 77 L.Ed.2d 22, cited in Whren v. United States, supra, 517 U.S. at page 812 [116 S.Ct. 1769], as an administrative search case. Villamonte-Marquez was, rather, a customs case.
[5] In People v. Calvert (1993) 18 Cal.App.4th 1820, 1831, 23 Cal.Rptr.2d 644, this court said that "so long as the officers had a proper justification for the searchhere a Vehicle Code section 2805 inspectionit is irrelevant the officers may have also subjectively hoped to find evidence of other crimes." In view of the rejection of Calvert's pretext argument on the ground there was no pretext, this statement is dictum. (Ibid.)
[*] Judge of the San Diego Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.