Filed 3/2/15  P. v. Fernandez CA2/7

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION SEVEN

| | |
|---|---|
| THE PEOPLE, | B255310 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. BA402850-02) |
| v. | |
| JIMMY FERNANDEZ, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, William N. Sterling, Judge.  Affirmed.

Christine Aros, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Lance E. Winters, Senior Assistant Attorney General, Susan Sullivan Pithey and Mary Sanchez, Deputy Attorneys General, for Plaintiff and Respondent.

_____

After entering a no contest plea to charges related to drug trafficking and firearm possession, Jimmy Fernandez appeals the denial of his search and seizure motions. We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

Fernandez and two others were arrested in connection with a suspected drug trafficking operation. Fernandez filed a motion pursuant to Penal Code section 1538.5 to suppress evidence of "[a]ny and all contraband and/or narcotics, digital scales, ammunition, firearms, money counter, cellular phones, and U.S. currency, as well as, any and all officer observations of same." The motion was made on the basis that Fernandez's vehicle and residence were searched improperly. One of Fernandez's codefendants, Robert Saucedo IV, filed an initial motion to traverse the search warrant and suppress evidence and a supplemental motion to traverse the search warrant and suppress evidence. A second codefendant, Robert Saucedo, Jr., moved to traverse and quash the search warrant and to suppress evidence.

The court called the matter for preliminary hearing and heard the motions to traverse the search warrant. Fernandez joined in Saucedo IV's arguments. The court denied the motions to traverse. The court then heard the motions to quash the search warrant and suppress evidence. Fernandez joined in Saucedo IV's arguments. After considering the motion, the court concluded that there was probable cause to issue the search warrant as to one of the two locations specified in the warrant (a residence on Blaine Avenue) but that the officers acted illegally in entering the other location (a Carfax Avenue residence) prior to obtaining a warrant. The court initially granted the motion to suppress as to the Carfax location but after further argument reversed itself. The court ultimately concluded that there was a nexus between the two locations and that even after excising the information from the search warrant that was obtained by the illegal entry into the Carfax location, the affidavit established probable cause to search both locations. The court then granted a continuance to permit review of discovery.

When court resumed, defense counsel orally moved to revisit the motions to quash and to traverse the search warrant. The motion was denied. The prosecutor filed a supplemental opposition to Fernandez's motion to suppress, contending that although the motions to traverse and quash had been denied, Fernandez's motion to suppress evidence remained pending. The preliminary hearing resumed. At the conclusion of the preliminary hearing, Fernandez and Saucedo IV were held to answer; Saucedo, Jr. was not held to answer. The court denied Fernandez's motion to suppress.

Fernandez was charged by amended information with one count of conspiracy to commit the crime of possession for sale of narcotics (Pen. Code, § 182, subd. (a)(1)); three counts of possession for sale of a controlled substance (Health & Saf. Code, § 11351); one count of possession of money or instruments over $100,000 obtained as a result of narcotics trafficking (Health & Saf. Code, § 11370.6, subd. (a)); one count of being a felon in possession of a firearm (Pen. Code, § 29800, subd. (a)(1)); and one count of possession of a controlled substance with a firearm (Health & Saf. Code, § 11370.1, subd (a)). Several enhancement allegations were set forth in the amended information.

Fernandez renewed his motions to suppress evidence and to quash and traverse the search warrant after the preliminary hearing, and the trial court denied them..

Fernandez pleaded no contest to all counts and admitted all allegations. He was sentenced to 12 years in state prison. Fernandez appeals.

## DISCUSSION

Fernandez argues on appeal that the trial court should have granted his motion to suppress the evidence because there was no probable cause to arrest him, the search warrant should have been quashed and traversed, and the evidence against him was seized in violation of his rights under the Fourth Amendment to the United States Constitution. "In reviewing the denial of [a motion to suppress evidence], we must view the record in the light most favorable to respondent [citation], uphold all express and implied factual findings of the trial court that are supported by substantial evidence, then independently apply the proper federal constitutional standards to those facts [citations]."

3

(*People v. Valenzuela* (1999) 74 Cal.App.4th 1202, 1206-1207.) "'[T]he power to judge the credibility of the witnesses, resolve any conflicts in the testimony, weigh the evidence and draw factual inferences, is vested in the trial court. On appeal all presumptions favor the exercise of that power . . . .' [Citations.]" (*In re Arturo D*. (2002) 27 Cal.4th 60, 77.)

## I.     Evidence Presented

Like the parties here, we draw the pertinent facts from the evidence presented at the preliminary hearing. On September 6, 2012, Dallas Hennessey, an investigator for the Orange County Sheriff's Department assigned to the Regional Narcotics Suppression Program, initiated an investigation of a residence on Carfax Avenue in Bellflower. Hennessey observed a Nissan Murano coming and going from the residence. He followed the Murano to a residence on Blaine Avenue in Bellflower. There, Hennessey saw Saucedo IV exit the Murano and enter the Blaine Avenue residence. Hennessey also saw a gold Honda Accord with a Washington license plate parked in the driveway at the Blaine address. Hennessey's investigation of the Accord revealed that it was related to a narcotics investigation.[1] Later that evening, Hennessey followed the Murano back to the Carfax residence, where Saucedo IV and a woman entered the Carfax house. Hennessey did not see anything at the Carfax address that aroused his suspicion of criminal activity, but he suspected criminal activity at the Blaine address based on the presence of the Accord.

On September 18, 2012, Hennessey conducted surveillance at the Carfax residence and saw Saucedo IV arrive in a blue Lexus, followed by the gold Accord that had been observed previously. Hennessey then saw a green Mercury Villager approach and park a

---

[1]     Although little testimony concerning the investigation of the Accord was elicited at the preliminary hearing, Hennessey's affidavit in support of the search warrant, submitted to the court in opposition to the motions to quash and traverse the warrant, provided further detail: Hennessey learned from a special agent at the Federal Bureau of Investigation that the Accord was involved in a large scale narcotics ring that was transporting large amounts of narcotics from California to Seattle, Washington, and had last been seen at a residence in Washington where a narcotics search warrant was served and multiple persons were taken into custody.

good distance away from the Carfax house although there was ample closer parking available. The driver, a Hispanic man, was carrying a heavily weighted backpack. He looked up and down the street before entering the Carfax residence. When this man left the house, Hennessey followed. The driver drove erratically and in a manner consistent with Hennessey's experience of counter-surveillance driving: he made sudden, quick turns into commercial parking lots and checked his side- and rear-view mirrors continuously while making these turns. Hennessey discontinued the surveillance.

The following day, September 19, Hennessey resumed surveillance of the Carfax residence at approximately 10:00 a.m. Saucedo IV arrived in the Murano, followed by a Toyota Sienna minivan. Saucedo IV moved cars around in the driveway as if making room for another vehicle. A Chevrolet Malibu arrived, drove all the way to the back of the driveway, and raised the hood. Saucedo IV and two others greeted the driver of the Malibu. It appeared that a package was exchanged between the subjects. After this exchange, the hood closed and the driver left in the Malibu. Hennessey attempted to follow, but the Malibu accelerated to a high rate of speed on the freeway and continued to change lanes, and Hennessey lost the car in heavy traffic.

At 10:35 a.m., Saucedo IV got into a Sienna minivan and went to the Blaine address. The previously-observed Lexus and Accord were parked in the driveway or at the curb. Fifty minutes later, Fernandez left the Blaine residence and entered the minivan. Fernandez drove to a commercial parking lot, where he parked the Sienna, walked to a Ford F-150 truck, and returned in the truck to the Blaine address. Fernandez backed the F-150 into the driveway, then began unloading what appeared to be heavy boxes underneath a half-open garage door. Fernandez then drove the F-150 back to the commercial parking lot, got back into the Sienna, and drove back to the Blaine address, backing the minivan all the way into the garage. The F-150 truck was driven away by an unknown person and was not followed.

Shortly after Fernandez's return to the Blaine residence, Saucedo IV left the garage with a shoulder bag that he put into the trunk of the Lexus. Fernandez drove out of the garage in the Sienna and began to close the garage door. Officers apprehended the

men, believing that they had witnessed a narcotics transaction. The officers did not have a warrant at that time.

Hennessey looked in the windows of the Sienna and saw two large cardboard boxes in the back seat. There were small holes or cuts in the boxes, revealing green cellophane wrap inside them. It appeared to Hennessey that the boxes contained "kilograms or large packages of narcotics."

After the suspects were held, the officers secured the Blaine residence by forcing entrance into the house and performing a safety sweep. Hennessey and others then went to the Carfax address. The team entered the house by force and secured it. While in the house pursuant to this entry, Hennessey saw a digital money counter, a large quantity of rubber bands, and green shrink wrap.

Hennessey then prepared an application for a search warrant. It took Hennessey 90 to 120 minutes to prepare the affidavit. It was close to 5:00 when he completed the documentation, so the nearest courthouse was already closed. After identifying the duty judge, Hennessey e-mailed the search warrant application to that judge for review between 5:00 and 5:45 p.m. The judge issued the warrant within an hour.

In the warrant search at the Blaine residence, officers seized the bag that Saucedo IV had been carrying from the trunk of the Lexus and found that it contained eight kilogram-sized packages of what appeared to be cocaine. The boxes inside the Sienna were found to contain more than $880,000 in cash wrapped in green shrink wrap. Inside the Blaine Avenue garage were a cardboard box containing 22 kilogram-sized packages of what appeared to be cocaine; a backpack containing what was believed to be methamphetamine; a bag of suspected cocaine; and a digital money counter. In the house officers found a loaded .38 caliber revolver and a picture of Fernandez next to a stack of money.

In the search of the Carfax residence after the warrant was issued, officers seized a plastic bag of what officers believed to be heroin in the garage as well as two rifles and an envelope containing what they suspected to be pay-owe sheets and routing numbers.

6

Inside the house officers discovered large amounts of currency, a weighing scale, a money counter, rubber bands, shrink wrap, and what may have been pay-owe sheets.

After the prosecutor finished presenting evidence, Saucedo IV's girlfriend testified that she had borrowed the Nissan Murano from Saucedo IV on the morning of September 19, 2012, and had driven it to Pasadena that morning for a prenatal appointment. She testified that she left the Carfax residence at approximately 9:00 a.m. and did not return the vehicle until the following day.

Robert Saucedo, Jr. also testified at the preliminary hearing. Saucedo, Jr. testified that he was at the Carfax residence on September 19, 2012, when the officers entered the home. He had not seen a money counter, green shrink wrap, or rubber bands in the house prior to that date. He testified that he was handcuffed and seated at the kitchen table in the house for approximately five or six hours. He saw officers searching the house prior to 6:30 or 7:00 p.m. and heard officers shuffling items around during the day.

## II.     Probable Cause

Fernandez argues that there was no probable cause to arrest him. "Probable cause to arrest exists if facts known to the arresting officer would lead a person of ordinary care and prudence to entertain an honest and strong suspicion that an individual is guilty of a crime." (*People v. Kraft* (2000) 23 Cal.4th 978, 1037.) In deciding whether probable cause exists, courts examine the totality of the circumstances at the time of the arrest. (*Illinois v. Gates* (1983) 462 U.S. 213, 233.)

Here, officers conducted surveillance at the Carfax and Blaine residences for several days, and observed a series of activities and events that together strongly suggested that narcotics trafficking was taking place. Participants in this activity included one vehicle linked to large scale narcotics distribution between Washington and California. Fernandez was seen exchanging vehicles, returning to one of the locations where the trafficking was believed to be occurring, unloading boxes from a truck in a manner suggesting a desire for secrecy, and delivering that truck to another location, where he again exchanged vehicles. The trial court, based on the circumstances as a

whole, properly could find the officers had probable cause to arrest Fernandez for drug trafficking.

Fernandez argues that his conduct was not suspicious and was consistent with innocent activity, giving the officers no probable cause to arrest him. He contends that the officers arrested him based on "a hunch" rather than on probable cause. He relies on *Cunha v. Superior Court* (1970) 2 Cal.3d 352 and *Remers v. Superior Court* (1970) 2 Cal.3d 659, both of which involved arrests for simple drug transactions. In *Cunha*, two suspects looked around as if nervous that they might be seen; the defendant appeared to pull something from his pocket, but the arresting officer could not see what it was. (*Cunha*, at p. 355.) In *Remers*, the defendant was arrested after looking over her shoulders, pulling something wrapped in tinfoil from her purse, and motioning to a companion to go inside a restaurant. (*Remers*, at p. 662.) In both of these cases the California Supreme Court found that there was no probable cause to arrest. In *Cunha*, the court explained that "an area known to be the site of frequent narcotics traffic should not be deemed to convert circumstances as innocent as an apparent transaction by pedestrians who seem generally concerned with their surroundings into sufficient cause to arrest those pedestrians." (*Cunha*, at p. 357.) In *Remers*, the court held that "an arrest and search based on events as consistent with innocent activity as with criminal activity is unlawful." (*Remers*, at p. 664.) These cases are unavailing to Fernandez. The police did not see Fernandez engaging in a single transaction on a street, but instead conducted surveillance over a number of days at multiple locations and saw evidence of a large trafficking organization with multiple vehicles, counter-surveillance driving techniques, indicia of multi-state activities, and package drop-offs. All these general observations and the specific observations of Fernandez participating in a vehicle exchange and furtively unloading a truck gave rise to probable cause here. (See, e.g., *People v. Gomez* (2004) 117 Cal.App.4th 531, 538 [upholding finding of probable cause where similar evidence of drug trafficking was observed].)

Fernandez argues that there was no evidence indicating the basis for the officers' suspicion that the containers they saw contained contraband. He cites *People v.*

8

*Huntsman* (1984) 152 Cal.App.3d 1073 and *People v. Knisely* (1976) 64 Cal.App.3d 110 for the principle that where a container is a common one with legitimate purposes, its presence is not alone enough to establish probable cause and that the reason for the suspicion that the container was used for unlawful purposes must be articulated on the record. To the extent that these cases remain good law (see *People v. Guajardo* (1994) 23 Cal.App.4th 1738, 1743 ["we cannot in this day and age (at least in Los Angeles County) give serious consideration to the holding in *People v. Knisely* that, in the absence of some evidence showing a cigarette pack is a common hiding place for narcotics, the fact that a small object is placed in the pack is not a suspicious circumstance"]), they apply in circumstances where the "the officer observed a single container that he suspected contained contraband. Since the presence of a single, legitimate container is not inherently suspicious, detailed testimony to establish the officer's reasonable basis for connecting this single container to criminal activity is required." (*People v. Nonnette* (1990) 221 Cal.App.3d 659, 667-668.) Where the container is one of many elements suggesting criminal activity, however, that common container may be considered suspicious. (*Id.* at p. 668.) Here, because the containers were only one element of the larger suspicious picture suggesting narcotics trafficking, the absence of testimony setting forth the basis for the officers' suspicion that the containers they saw contained contraband is not significant.

Fernandez also complains that there was no testimony about money being exchanged as there had been in *People v. Maltz* (1971) 14 Cal.App.3d 381 and *People v. Garrett* (1972) 29 Cal.App.3d 535; that the officers could not see what was in the boxes he was sliding into the garage; that there was no testimony that the officers had prior contact with him; that there was no evidence that the area was known for drug transactions; and that there was no evidence that he was acting secretively or was nervous. Here, as with the container argument, Fernandez identifies the absence of certain elements in the overall determination of probable cause and argues that in the absence of those elements there was no probable cause. Probable cause, however, is determined on the totality of the circumstances, and here, regardless of these arguments,

the totality of the circumstances provided probable cause to arrest Fernandez as a participant in a drug trafficking operation.

### III.     Motion to Quash the Search Warrant

Fernandez argues that his motion to quash the search warrant should have been granted because the affidavit did not provide sufficient facts to support a finding of probable cause.

"In reviewing a search conducted pursuant to a warrant, an appellate court inquires 'whether the magistrate had a substantial basis for concluding a fair probability existed that a search would uncover wrongdoing.' [Citation.] 'The task of the issuing magistrate is simply to make a practical, commonsense decision whether, given all the circumstances set forth in the affidavit before him [or her], including the "veracity" and "basis of knowledge" of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place.' [Citation.] The magistrate's determination of probable cause is entitled to deferential review. [Citation.]" (*People v. Carrington* (2009) 47 Cal.4th 145, 161.)

Fernandez urges that the totality of the circumstances failed to establish probable cause for the issuance for the search warrant. He divides the observations of the officers up by day and argues that each day's observations were insufficient to create a fair probability that evidence of drug trafficking would be found. He also argues that many of the activities observed were consistent with innocent behavior. We consider the totality of the circumstances and conclude that the affidavit established probable cause to issue the search warrant. Hennessey's affidavit set forth in detail his training and experience in combating narcotics. A court may reasonably rely on the special experience and expertise of the affiant officer in considering whether probable cause exists. (*People v. Varghese* (2008) 162 Cal.App.4th 1084, 1103.) The warrant also included the information that during the course of a three-day surveillance, a large amount of vehicle traffic was observed at both residences, and at least one car left that location using counter-surveillance driving techniques. On each of the days of

10

surveillance described in the affidavit, a car from Washington (the Accord) that was linked to extensive drug trafficking between Seattle and California appeared at one or the other of the two residences.

On September 18, when the Accord was at the Carfax address, a Mercury Villager also arrived there. The Villager's driver, looking around and appearing nervous, entered the Carfax residence carrying a heavy backpack; he soon left the residence in the Villager and drove away using counter-surveillance driving techniques. Similarly, when the Accord was at the Blaine residence on September 19, a Chevy Malibu was involved in a package exchange at the Carfax residence and then drove away at a high speed; two vehicle switches took place involving a car from the Blaine address. As soon as the Ford pick-up was returned to the parking lot and the person who had driven it there (later identified as Fernandez) got back into the Sienna and left the lot, an unknown person immediately entered that pick-up and drove away. The affidavit also described the unloading of "heavily weighted boxes" from the pick-up truck into partially-open garages that immediately closed, all in the immediate presence of a narcotics registrant (Saucedo IV) and a car tied to an interstate narcotics trafficking operation. Considering the totality of the circumstances presented by Hennessey's affidavit, the court had a substantial basis for concluding that the warrant would yield evidence of wrongdoing.[2]

Fernandez next argues that, assuming this court disagrees with his argument that the affidavit on its face failed to establish probable cause, the affidavit fails to establish probable cause once information obtained from the entry into the Carfax residence is excised from the affidavit. Here, Fernandez is referring to the court's ruling that the entry into the Carfax residence prior to the issuance of the search warrant was illegal. The court concluded that the affidavit established probable cause even when the evidence arising from the illegal entry into the Carfax residence were excised from it due to the "nexus between the two locations, individuals and vehicles." This finding is supported

_____

[2]    Our conclusion that the affidavit established probable cause to issue the search warrant eliminates the need to address Fernandez's argument that the good faith exception to the exclusionary rule does not apply here.

11

by the substantial evidence linking the two residences both by vehicles and by individuals. As set forth above, our conclusion that the court had a substantial basis for determining that the affidavit established probable cause is not dependent on the evidence obtained in the entry to the Carfax residence; probable cause was established without reference to the items seen by the officers once they entered the Carfax house.

## IV. Motion to Traverse the Search Warrant

Fernandez contends that the motion to traverse the search warrant should have been granted because the affidavit in support of the warrant contained knowingly and intentionally false statements or statements made with reckless disregard for the truth. He claims that the affidavit contained two false statements: first, that the officers saw a package exchanged; and second, that they saw a large number of kilogram-sized packages of supposed cocaine in a brown cardboard box in the back of the Sienna.

"A defendant has a limited right to challenge the veracity of statements contained in an affidavit of probable cause made in support of the issuance of a search warrant. The trial court must conduct an evidentiary hearing only if a defendant makes a substantial showing that (1) the affidavit contains statements that are deliberately false or were made in reckless disregard of the truth, and (2) the affidavit's remaining contents, after the false statements are excised, are insufficient to support a finding of probable cause. Innocent or negligent misrepresentations will not support a motion to traverse. (*Franks v. Delaware* (1978) 438 U.S. 154, 154-156, 98 S.Ct. 2674, 57 L.Ed.2d 667; *People v. Lewis and Oliver* (2006) 39 Cal.4th 970, 988-989, 47 Cal.Rptr.3d 467, 140 P.3d 775.) A defendant who challenges a search warrant based on omissions in the affidavit bears the burden of showing an intentional or reckless omission of material information that, when added to the affidavit, renders it insufficient to support a finding of probable cause. [Citations.] In either setting, the defendant must make his showing by a preponderance of the evidence, and the affidavit is presumed valid." (*People v. Scott* (2011) 52 Cal.4th 452, 484.)

12

Fernandez asserts that Hennessey falsely stated in the affidavit that the officers saw a package exchanged because in fact no transaction could have been seen. Fernandez first claims an omission in the affidavit concerning a car hood. In the surveillance log, it had been noted that when the Malibu pulled into the driveway at the Carfax residence, the driver immediately opened the vehicle's hood in what appeared to be an attempt to obstruct others' view of the driver and the other persons. The search warrant affidavit did not state that the hood was raised when it recounted the exchange of a package between the vehicle's driver and another person. Fernandez also claims that it would have been "difficult" to see the men on the driveway because of their position on the driveway, and he claims that two photographic exhibits demonstrate that "it was impossible to even see the driveway from certain vantage points."

The trial court found that the omission from the affidavit of a description of the raised hood was not material. The court also found that the photographs submitted by the defense did not depict what occurred at the time the officers were conducting their surveillance, and that even if the court relied upon the photographs, the hood of a vehicle being raised would not make it impossible to see a package transaction. Accordingly, the trial court concluded that Fernandez had not made a showing sufficient to entitle him to an evidentiary hearing on the motion to traverse the warrant. The trial court did not err. Fernandez did not make a substantial showing that the affidavit contained statements that are deliberately false or were made in reckless disregard of the truth, and there is no substantial possibility that knowing that the hood was raised in an apparent attempt to conceal the men's actions would have rendered the affidavit insufficient to support a finding of probable cause. The omission of that fact did not make the affidavit substantially misleading.

The second basis for the motion to traverse is the statement in the affidavit that the officers saw in plain sight in the back of the Sienna "a large amount of kilogram sized packages of suspected cocaine in a brown cardboard box." Fernandez claimed in the trial court that this was "a complete misrepresentation," and on appeal he argues that "[i]t is clear from the testimony at the preliminary hearing that what the officers saw was in fact

13

a closed and sealed box of which they did not know the contents." He contends that "if the magistrate had know[n] that the officers did not actually see kilogram sized packages, but instead just saw cellophane through a small hole in a box, little weight would have been attached to that evidence in determining whether there was probable cause."

We have reviewed the testimony regarding the boxes in the Sienna and the pertinent photographs. At the preliminary hearing, Hennessey testified he looked in the windows of the mini-van and saw two large cardboard boxes in the back seat. There were small holes or cuts in the boxes and Hennessey saw what appeared to be green cellophane packaging wrap inside the boxes. It appeared to Hennessey that the packaging contained "kilograms or large packages of narcotics." Hennessey testified that the size of the boxes and the green shrink wrap led him to believe that they contained cocaine. From our review of the photographs, while the box lids are down and there appears to be tape on them, at least one of the boxes is not fully intact; there are visible tears and damage to one of the boxes. The trial court viewed the photographs and found they depicted "some holes in the box or areas where the box is tearing. There is a portion here where it looks like the cardboard box is actually open, although the court doesn't have a clear view of that. [¶] And there is another portion where there is actually an opening. And that is the best that the court can decipher from the photos that are shown."

Whether this alleged flaw in the affidavit is characterized as an omission of exactly what the officers were able to see or a false assessment of what they did see, Fernandez has not established that the court erred in denying the motion to traverse the warrant. He did not make a substantial showing of falsity or reckless disregard for the truth with respect to the boxes in the Sienna, nor did he demonstrate that if the statement of what Hennessey believed to be in the boxes was excised, the affidavit was rendered insufficient to establish probable cause. Similarly, Fernandez did not make a substantial showing of an intentional or reckless omission of material information that, when added to the affidavit, rendered it insufficient to support a finding of probable cause.

14

## V.    Remaining Suppression Arguments

Fernandez argues that the evidence obtained during the initial warrantless entry into the Carfax residence should not have been admitted under the inevitable discovery doctrine.  The trial court properly ruled that this evidence was admissible under the doctrine of inevitable discovery, which recognizes that if the prosecution can establish by a preponderance of the evidence that the information inevitably would have been discovered by lawful means, then the exclusionary rule will not apply.  (*Nix v. Williams* (1984) 467 U.S. 431, 443-444; *People v. Coffman and Marlow* (2004) 34 Cal.4th 1, 62.)  Even when the evidence obtained during this initial illegal search was excised from the search warrant affidavit, there remained probable cause to issue the search warrant as to both the Blaine and Carfax addresses.  As the search warrant would have issued even without that information, the evidence at Carfax inevitably would have been discovered when the warrant was issued.  Fernandez has demonstrated no error here.

Finally, Fernandez challenges the trial court's determination that the officers had probable cause to search the vehicle without a warrant under the automobile exception to the warrant requirement.  Fernandez acknowledges that a lawful custodial arrest supports a search of a vehicle occupied or recently occupied by the arrestee "when the arrestee is unsecured and within reaching distance of the passenger compartment at the time of the search" or "when it is 'reasonable to believe evidence relevant to the crime of arrest might be found in the vehicle'" (*Arizona v. Gant* (2009) 556 U.S. 332, 343), but he argues that there was "no evidence suggesting that appellant had narcotics or any other contraband in his van, that Saucedo had any contraband in his Lexus, or that they were otherwise engaged in any illegal or suspicious conduct."  Fernandez's argument is inconsistent with the evidence.  Fernandez's arrest was lawful; he was observed to be a participant in what officers had probable cause to believe was illegal drug trafficking; had engaged in a vehicle swap that the officers reasonably believed was a narcotics transaction; had driven to the Blaine address in the Sienna just prior to the arrest; and possessed boxes that appeared to contain contraband in plain view in his vehicle.  It was

15

reasonable for law enforcement officers to believe that the Sienna contained evidence of criminal activity. Fernandez has not established any error here.

## DISPOSITION

The judgment is affirmed.


ZELON, J.


We concur:


PERLUSS, P. J.


WOODS, J.