**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Allan Gale CLEAVELAND,
Defendant–Appellant.**

**No. 93–30440.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Sept. 15, 1994.

Decided Oct. 25, 1994.

As Amended Jan. 12, 1995.

Colleen Scissors, Asst. Federal Public Defender, Portland, OR, for defendant-appellant.

Kristine Olson Rogers, U.S. Atty., and J. Richard Scruggs, Asst. U.S. Atty., Portland, OR, for plaintiff-appellee.

Before: THOMPSON and TROTT, Circuit Judges, and TASHIMA,* District Judge.

DAVID R. THOMPSON, Circuit Judge:

Allan Gale Cleaveland appeals his conviction following entry of a conditional plea of guilty to being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g). He contends the district court erred in denying his motion to suppress evidence seized from his house pursuant to a search warrant. He argues the affidavit used by police to

* Hon. A. Wallace Tashima, United States District Judge for the Central District of California, sitting by designation.

obtain the warrant was based on evidence found during a warrantless search by Portland General Electric Company (PGE) employees acting in conjunction with law enforcement officers.

We have jurisdiction under 28 U.S.C. § 1291. Because PGE's independent motive for its search was not overridden by intrusive police participation, we affirm.

## FACTS

PGE's Energy Recovery Unit (ERU) is responsible for locating power diversions and collecting money owed PGE for the theft of its electricity. The ERU received an anonymous tip there was an illegal power diversion and a possible marijuana grow at Cleaveland's residence.

In such a case, it is quite common for PGE to contact the police. Thus, when the ERU received the anonymous tip, Steve Sprague, an ERU supervisor, reported this to the Lake Oswego police. He told them he was going to inspect the electric meter at Cleaveland's house. He wanted the police to be present in the event the situation became dangerous, and if his inspection uncovered the likelihood of a power diversion, he wanted the police to be able to get a warrant to search the house to confirm the power theft.

The next day, Sprague and an ERU electrical technician went to Cleaveland's house. A Lake Oswego police detective waited in a parked car approximately one block away. Sprague and the technician went onto Cleaveland's property and examined the meter which was mounted on the outside of the house. They had authority to do this pursuant to PGE's Customer Service Agreement.

Although the meter hookup appeared to be normal, when Sprague and the technician removed a weather head at the top of a conduit pipe and looked inside the pipe with a flashlight, they could see additional wires clamped onto the direct incoming PGE lines. When they removed securing brackets and pulled the conduit away from the side of the house, they could see additional lines entering the house from the back side of the pipe.

Based on this evidence, the police detective prepared an affidavit and obtained a warrant to search Cleaveland's house. Police officers executed the warrant that afternoon. Inside the house they found marijuana plants, several firearms and further evidence of the power diversion.

When Cleaveland's motion to suppress the evidence found in his house was denied, he entered a conditional guilty plea to being a felon in possession of a firearm. He was sentenced to twenty-one months in prison, and this appeal followed.

## DISCUSSION

Cleaveland argues Sprague acted as an agent of the police when he searched the meter and gathered the information which was used to obtain the warrant to search the house. Thus, he contends, the search of the house was illegal and the evidence found during that search, including the firearms, should have been suppressed.

"Where a private party acts as an 'instrument or agent' of the state in effecting a search or seizure, Fourth Amendment interests are implicated." *Coolidge v. New Hampshire,* 403 U.S. 443, 487, 91 S.Ct. 2022, 2048–49, 29 L.Ed.2d 564 (1971). However, a search conducted by a private party not acting as an agent for law enforcement officials does not implicate the Fourth Amendment. *See United States v. Jacobsen,* 466 U.S. 109, 115, 104 S.Ct. 1652, 1657–58, 80 L.Ed.2d 85 (1984); *United States v. Black,* 767 F.2d 1334, 1339 (9th Cir.), *cert. denied,* 474 U.S. 1022, 106 S.Ct. 574, 88 L.Ed.2d 557 (1985).

In determining whether a private party's search implicates the Fourth Amendment, the relevant inquiry is: "(1) whether the government knew of and acquiesced in the intrusive conduct; and (2) whether the party performing the search intended to assist law enforcement efforts or further his own ends." *United States v. Reed,* 15 F.3d 928, 931 (9th Cir.1994) (quoting *United States v. Miller,* 688 F.2d 652, 656 (9th Cir. 1982)); *see also United States v. Walther,* 652 F.2d 788, 791–92 (9th Cir.1981). The defendant has the burden of establishing government involvement in a private search. *See United States v. Snowadzki,* 723 F.2d 1427, 1429 (9th Cir.), *cert. denied,* 469 U.S. 839, 105 S.Ct. 140, 83 L.Ed.2d 80 (1984).

Here, the police knew of and acquiesced in PGE's search of the meter at Cleaveland's house. The question we must decide is whether, in performing that search, PGE intended to assist law enforcement efforts or further its own ends.

We conclude PGE had a "legitimate, independent motivation" to further its own ends. *See Walther,* 652 F.2d at 792; *Reed,* 15 F.3d at 931. That motivation was not negated by any dual motive to detect or prevent crime or assist the police, or by the presence of the police nearby during the search.

It was PGE, not the police, who initiated the plan to inspect the meter. There was "no reason why the [detective] should have restrained [Sprague] or discouraged him" in his search, *Miller,* 688 F.2d at 657, because Sprague never exceeded his authority under the Customer Service Agreement to go on the property and inspect the meter. *Compare Reed,* 15 F.3d at 931–32 (after confirming hotel room's condition, manager proceeded to rummage unlawfully through defendant's dresser drawers and luggage while police watched). Once Sprague confirmed that Cleaveland was stealing power, he broke off the search. *See Miller, supra; see also Reed,* 15 F.3d at 932–33 n. 6 (distinguishing *Miller* on the ground the search in *Miller* was limited, and independent motivation existed during the "entire course" of the search, despite the fact that police were present).

Rather than acting as a "lookout" and actively participating in the search, *see Reed,* 15 F.3d at 932, here the detective's only purpose for being in the area was to ensure Sprague's safety. *See Miller,* 688 F.2d at 656, 658; *cf. Howerton v. Gabica,* 708 F.2d 380 (9th Cir.1983) (where police merely "stand by in case of trouble" during unlawful eviction, no state action exists under 42 U.S.C. § 1983); *Harris v. City of Roseburg,* 664 F.2d 1121 (9th Cir.1981) (same in context of creditor repossession).

While Sprague may have had dual motives for conducting the search—to recover money for PGE's loss of power on the one hand, and to assist the police in capturing the power thief (and perhaps uncovering a marijuana grow) on the other—his motive to recover for PGE's loss of power was a legitimate, independent motive apart from crime detection or prevention. That motivation was not overridden by the fact the police stood by during the search, and used the fruits of that search to obtain a warrant to search Cleaveland's house. *Miller,* 688 F.2d at 658.

We recognize that the mere existence of a legitimate, independent motive apart from crime detection or prevention does not immunize a search from scrutiny regardless of the level of government involvement. *See Corngold v. United States,* 367 F.2d 1, 5–6 (9th Cir.1966) (en banc). However, in this case the government's participation was not so extensive as to trigger Fourth Amendment scrutiny.

We conclude the district court did not err in denying Cleaveland's motion to suppress evidence seized from his residence pursuant to the search warrant which was obtained as a result of PGE's search of the meter.

**AFFIRMED.**