Filed 8/31/15 P. v. Blair CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE, | H041033 |
| Plaintiff and Respondent, | (Santa Clara County Super. Ct. No. C1106101) |
| v. | |
| MICHAEL ERNEST BLAIR, | |
| Defendant and Appellant. | |

A jury found defendant Michael Ernest Blair guilty of conspiracy to cultivate and possess marijuana (Pen. Code, § 182, subd. (a)(1)), cultivation of marijuana (Health & Saf. Code, § 11358), possession of marijuana for sale (*id*., § 11359), and maintenance of a place for unlawfully growing marijuana (*id*., § 11366). The jury also found true three arming allegations (Pen. Code, § 12022, subd. (a)(1)). Defendant was placed on three years' probation.

On appeal, defendant argues the trial court's partial denial of his motion to suppress evidence found in a FedEx package addressed to him was made in error, because the FedEx employee who opened the package was acting as an agent of the police and had not obtained a search warrant prior to the search. He also raises a claim of ineffective assistance of counsel, arguing that if his trial counsel's decision to separately bring a motion to suppress and a motion to quash forfeited any of his appellate claims, he is entitled to a reversal. We reject defendant's contentions and affirm the judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

After intercepting a FedEx package addressed to defendant that contained bulk United States currency, officers searched defendant's home and found marijuana, marijuana cultivating supplies, and multiple guns.

On June 12, 2013, defendant and his codefendant, Steven Blair, were charged by a first amended information with conspiracy to cultivate and to possess marijuana (Pen. Code, § 182, subd. (a)(1)), cultivation of marijuana (Health & Saf. Code, § 11358), possession of marijuana for sale (*id*., § 11359), and maintenance of a place for unlawfully growing marijuana (*id*., § 11366). Counts 3 and 4 alleged that defendant was armed at the time of the offense. (Pen. Code, § 12022, subd. (a)(1).)

Defendant moved to suppress the evidence obtained from the FedEx package. Following a hearing, the court filed a written order partially granting the motion to suppress. The court held that the FedEx package was opened by a FedEx employee acting as a private individual. Therefore, the initial search of the package, including the discovery of the bulk currency, did not violate defendant's Fourth Amendment rights. However, the court concluded that a police officer's subsequent search of the package without a warrant was illegal. Therefore, the evidence obtained from the subsequent search, including the denominations of the bills in the package and the amount of money enclosed, was suppressed.

Separately, defendant filed a motion to quash a search warrant for his house, arguing that the illegally obtained evidence could not form the basis of probable cause for the search warrant. The motion was denied.

After a jury trial, defendant was convicted of all counts. The jury also found the arming allegations to be true. Codefendant Blair was acquitted of all counts. On May 16, 2014, defendant was placed on three years' probation.

DISCUSSION

On appeal, defendant argues reversal is necessary because the court erred when it partially granted his suppression motion.  He claims that the FedEx employee who initially opened the package was acting as an agent for the police.  Therefore, a search warrant was necessary.  For the reasons set forth below, we find no merit in this argument.

1.  *The Motion to Suppress*

### a.  Background

Defendant filed a motion to suppress the evidence found in the intercepted FedEx package.  He argued that the search was illegal, because it was undertaken without a warrant.  The People opposed the motion, maintaining that the FedEx employee opened the package as a private citizen, so his actions did not implicate the Fourth Amendment.

At the suppression hearing, San Jose Police Department Officer Tyler Krauel testified regarding the circumstances of the package's discovery.  On April 8, 2011, he participated in a parcel interdiction program at a FedEx facility located in San Jose.  Also present was a FedEx senior security specialist, Delbert Tullos.

Officer Krauel explained the typical process of the parcel interdiction program.  While at the FedEx facility, he would watch packages go by on the conveyer belt.  If he saw a package that was "interesting," he would pull the package off the conveyer belt and have his trained drug-sniffing dog smell the box.  If Krauel's dog alerted him to the presence of narcotics, he would write a search warrant for the package.

On the other hand, if Tullos was present and if he saw a package that he was interested in inspecting, he would open the package pursuant to FedEx policy.  Officer Krauel said he was usually a few feet away from Tullos and would not purposefully look over Tullos' shoulder.  Tullos would step away to open packages he believed were suspicious and would remove himself from any officers' presence.

3

That morning, Tullos informed Officer Krauel that he had located a suspicious package. At that point, Tullos had already opened the package and had found that it contained a bulk amount of United States currency. When Tullos showed Krauel the suspicious box, Krauel could see the currency inside. Krauel explained that it was FedEx policy to leave suspicious items inside the box to discourage employees from stealing.

Officer Krauel determined from the outside of the box that the sender of the package was Mike Zarro, and the recipient was listed as Mike Blair. Krauel took the package to an area of the FedEx facility that had already been searched by his dog. The dog alerted him that the package contained an odor of narcotics. Krauel then took the package with him to the police station where he took the money out of the box and counted the bills. He also looked for other contraband. He did not conduct any other tests to determine if there was any trace of marijuana in the box, but Krauel said he could smell marijuana emanating from the package. Krauel found a letter underneath the block of currency that contained a message alluding to marijuana sales.

Officer Krauel was the only one who testified during the hearing. After hearing his testimony, the court issued a written order granting defendant's motion to suppress in part. The court concluded that when Tullos opened the box and partially unwrapped the bundle of currency, he was acting as a private citizen. Therefore, at that point there was no Fourth Amendment violation. Additionally, when Krauel initially seized the box from Tullos, there was no Fourth Amendment violation, because he had not exceeded what Tullos had already done to the box. However, a violation of the Fourth Amendment occurred when Krauel continued his investigation by taking the money out and counting the number of bills. Additionally, the court noted that it had no information about whether the letter in the box was folded or if Krauel was prevented from reading the letter's contents without first removing it from the box. The court therefore concluded that based on the absence of evidence, the letter must also be suppressed.

4

Afterwards, defendant moved to quash the warrant and to suppress the evidence seized during the search of defendant's home. He argued that the affidavit submitted by Officer Krauel, if excised of all the information obtained illegally, would lack sufficient probable cause to search his home. The trial court denied the motion, finding that probable cause to issue the warrant existed even if the illegally obtained information was excised.

### b. Standard of Review

"Defendant's challenge to the trial court's ruling denying his motion to suppress presents a mixed question of law and fact that is subject to a two-tier standard of review. 'The standard of appellate review of a trial court's ruling on a motion to suppress is well established. We defer to the trial court's factual findings, express or implied, where supported by substantial evidence. In determining whether, on the facts so found, the search or seizure was reasonable under the Fourth Amendment, we exercise our independent judgment.' " (*People v. Sardinas* (2009) 170 Cal.App.4th 488, 493.) "In determining whether substantial evidence supports the trial court's findings, '[i]f there is conflicting testimony, we must accept . . . the version of events most favorable to the People, to the extent the record supports them.' " (*People v. Boulter* (2011) 199 Cal.App.4th 761, 767.)

### c. Tullos' Initial Search

Defendant argues that Tullo's initial search of the FedEx package was illegal, because he was acting as an agent for the police and had not obtained a search warrant prior to the search. We disagree.

"The Fourth Amendment's prohibition against unreasonable searches and seizures does not apply to searches by private citizens, even if the private citizens act unlawfully, unless the private citizen can be said to be acting as an agent for the government. [Citations.] 'Whether a private citizen is acting as a de facto police officer is an issue of

5

fact and thus an issue for the trial court.' " (*People v. Wilkinson* (2008) 163 Cal.App.4th 1554, 1564 (*Wilkinson*).)

"In determining whether a private party's search implicates the Fourth Amendment, the relevant inquiry is: '(1) whether the government knew of and acquiesced in the intrusive conduct; and (2) whether the party performing the search intended to assist law enforcement efforts or further his own ends.' [Citations.] The defendant has the burden of establishing government involvement in a private search." (*U.S. v. Cleveland* (9th Cir. 1994) 38 F.3d 1092, 1093.) " 'In order to run afoul of the Fourth Amendment, . . . the Government must do more than passively accept or acquiesce in a private party's search efforts. Rather, there must be some degree of Government participation in the private search.' " (*Wilkinson*, *supra*, 163 Cal.App.4th at p. 1566.)

Here, the court determined that when Tullos initially opened the box and partially unwrapped the bundle of currency, he was acting in his own private capacity. Therefore, the court concluded there was no Fourth Amendment violation.

Defendant disagrees with the court's determination and infers Officer Krauel's knowledge and acquiescence to Tullos' search based on Krauel's testimony. Specifically, defendant points to portions of Krauel's testimony where he discusses that he has worked "with" Tullos for several years, and that they had "participated" in the parcel interdiction program together. However, police presence at a scene does not necessarily convert all private individuals present into de facto agents of the police. (But see *U.S. v. Reed* (9th Cir. 1994) 15 F.3d 928, 932 [holding that police acted as "lookouts" for the private citizen, therefore search by private citizen violated the Fourth Amendment].) The requisite elements, including police knowledge and acquiescence of the search, and the third party's intent to assist law enforcement, must also be met.

Here, there is evidence that Officer Krauel had no knowledge and did not acquiesce to the search. Krauel asserted that Tullos would pull packages he found to be

6

suspicious, and when he did so he would open them pursuant to FedEx policy. Additionally, Krauel said that he did not actively look over Tulllos' shoulder when he was inspecting packages. And, by the time Tullos notified him of the package at issue here, Tullos had already pulled the package off the conveyer belt and had opened it. There is therefore sufficient evidence to support a conclusion that Krauel did not know of the intrusive conduct, nor did he acquiesce to it.

Defendant argues that it could be said that Officer Krauel had "knowledge" of the search, to the extent that he was aware that Tullos would generally pull packages he thought were suspicious and would open them pursuant to the company's policy. Furthermore, Krauel could also be said to have "acquiesced" to the search by failing to interfere in any manner to Tullos' activities.

If we were to accept defendant's argument on this point, any search conducted by Tullos while the police were at the FedEx facility would have been done with government knowledge and acquiescence. However, "a defendant must prove some exercise of governmental power over the private entity, such that the private entity may be said to have acted on behalf of the government rather than for its own, private purposes. . . . Mere knowledge of another's independent action, does not produce vicarious responsibility absent some manifestation of consent and the ability to control." (*U.S. v. Koenig* (7th Cir. 1988) 856 F.2d 843, 849-850.)

In *United States v. Walther* (9th Cir. 1981) 652 F.2d 788 (*Walther*), the Ninth Circuit concluded that the district court was correct in finding that an airline employee acted as an agent for the government when he opened a case shipped by the airline and found illegal drugs. The employee had been a confidential informant working for the Drug Enforcement Administration (DEA) between 1973 and 1977. (*Id*. at p. 790.) Unbeknownst to the employee, his file had been closed in 1977 when he was on a leave of absence for the airline. Therefore, the employee had no knowledge that his file with the DEA had been closed when he opened the suspicious case in 1979. (*Ibid*.) The

7

employee further testified that "there was no reason that he should not expect a reward" for finding the illicit package, and a DEA agent also testified that it would be reasonable for the employee to have such an expectation. (*Id*. at p. 792.)

Based on testimony by the employee and a DEA agent, the Ninth Circuit concluded it was satisfied that the employee's prior experience with the DEA was proof of the government's acquiescence. (*Walther*, *supra*, 652 F.2d at p. 793.) The court noted that although the DEA had no prior knowledge regarding the particular search in question, it had certainly encouraged the employee to engage in this type of search in the past, and the employee had previously been rewarded for providing drug-related information. (*Ibid*.) Therefore, the DEA had "knowledge of a particular pattern of search activity dealing with a specific category of cargo, and had acquiesced in such activity." (*Ibid*.)

However, the *Walther* court emphasized the narrowness of its holding, noting that it was "dependent upon the trial court's finding of extensive contact between [the employee] and the DEA and its finding on [the employee's] motivation for opening the overnight case." (*Walther*, *supra*, 652 F.2d at p. 793.)

*Walther* is distinguishable from this case. Officer Krauel did not testify that he or other police officers had encouraged Tullos to search for narcotics or illicit substances in the past. Furthermore, Krauel did not testify that Tullos had an extensive working relationship with the police, or that Tullos could reasonably expect a reward or compensation for his findings. All Krauel said was that Tullos would sometimes be present when he and his fellow officers were at the FedEx facility for the parcel interdiction program. And, Tullos would open packages that *he*, not Krauel, was interested in, pursuant to FedEx policy. Defendant's contention that Tullos and Krauel had a close working relationship is based on speculation, not evidence.

On a motion to suppress, the trial court is vested with the power to determine credibility of witnesses. (*People v. Lawler* (1973) 9 Cal.3d 156, 160.) It is apparent that

8

the court found Officer Krauel's testimony to be credible regarding the scope of his involvement in Tullos' search. And, we must defer to the trial court's factual findings if supported by substantial evidence, as it is here. (*People v. Glaser* (1995) 11 Cal.4th 354, 362.)

Furthermore, the second element of demonstrating agency is not established. Tullos was a FedEx security specialist, and Officer Krauel testified that Tullos opened packages that he was interested in pursuant to FedEx policy. Therefore, there was evidence that Tullos had a distinct motivation to conduct the search wholly separate from a motivation to assist law enforcement.

For example, in *U.S. v. Young* (9th Cir. 1998) 153 F.3d 1079, the defendant argued that a FedEx employee acted as an agent of the police when he opened a package containing methamphetamine. The district court concluded, in part, that the FedEx employee had opened the package for legitimate business purposes pursuant to company policy. (*Id.* at p. 1080.) In *Young*, a FedEx security manager testified that the company was concerned about theft of drugs, because FedEx employees "had been killed in apparent retribution after packages containing drugs were not delivered." (*Id.* at p. 1081.) Additionally, FedEx was concerned about the volatility and flammability of illegal drugs during transit. (*Ibid.*) Based on these facts, the Ninth Circuit concluded that the defendant had failed to establish that FedEx had performed the search to assist law enforcement, not to further its own business purposes. (*Ibid.*) Although Officer Krauel did not testify as to the particulars of the FedEx policy here, he did state that Tullos opened the package pursuant to the company's policy, not out of a motivation to assist the police.

Additionally, even if Tullos did have the additional motivation to assist law enforcement, this motivation would not negate his separate, nonlaw enforcement motive to open the package. In *U.S. v. Cleveland*, *supra*, 38 F.3d 1092, the Ninth Circuit found that a search conducted by a Portland General Electric Company (PGE) employee did not

9

implicate the Fourth Amendment, because it was a private search. There, PGE received an anonymous tip that there was an illegal power diversion and a possible marijuana grow at the defendant's home. (*Id*. at p. 1093.) PGE contacted police and requested their presence at the employees' search, in case the situation became dangerous. (*Ibid*.) Additionally, PGE wanted the police to be able to get a warrant to search the house to confirm a power theft if the inspection uncovered illegal activity. (*Ibid*.) The following day, PGE employees went with a police officer to the defendant's house. The police officer remained parked in a car approximately a block away while the PGE employees examined the meter pursuant to PGE's customer service agreement. (*Ibid*.) After the PGE employees detected an illegal power diversion, they notified the police officer who prepared an affidavit and obtained a search warrant to search the defendant's home. (*Ibid*.)

The defendant in *Cleveland* filed a motion to suppress, which was denied. On appeal, the Ninth Circuit concluded that the police knew of and acquiesced in PGE's search of the meter at the defendant's house. (*U.S. v. Cleveland*, *supra*, 38 F.3d at p. 1094.) However, the court held that PGE had a legitimate, independent motivation to conduct the search and that motivation "was not negated by any dual motive to detect or prevent crime or assist the police, or by the presence of the police nearby during the search." (*Ibid*.) Therefore, the Ninth Circuit concluded that the motion to suppress was properly denied. (*Ibid*.)

The rationale set forth in *Cleveland* is applicable here. Even assuming that Tullos possessed a motivation to conduct the search on behalf of law enforcement, this motivation would not negate Tullos' separate motive to implement company policy as a FedEx security specialist.

It is worthwhile to note that many of defendant's arguments are based on his own interpretation of the facts taken from Officer Krauel's testimony. For example, in his reply brief, defendant claims that Krauel undoubtedly knew that Tullos specifically

10

seized packages he believed to contain contraband and that Tullos did so to aid the police. And, defendant claims that Tullos and Krauel's working relationship affirmatively indicates that Krauel did more than passively acquiesce to the searches. Defendant therefore argues that it is only reasonable to conclude that Tullos and Krauel worked "side by side" during parcel interdiction programs and that they searched for contraband together, transforming Tullos into an agent for the police.

Nonetheless, Officer Krauel did not testify that Tullos specifically targeted packages he believed to contain illegal contraband, or that he in some way encouraged or directed Tullos to open specific packages. Again, all Krauel stated was that Tullos pulled packages that *he* believed to be suspicious and would open them pursuant to FedEx policy, away from police. Krauel's testimony regarding the circumstances of Tullos' search of the package was relatively short, and Tullos did not testify at the hearing. The trial court must have credited Krauel's statement as true, finding that the actions taken by Tullos were that of a private individual. Defendant's claim that there is only one rational inference--that Krauel and Tullos were operating together--must be rejected. We must defer to the trial court's reasonable inferences and factual findings regarding the circumstances of the search. (*People v. Leyba* (1981) 29 Cal.3d 591, 596-597.)

Based on the foregoing, we conclude that the trial court's determination that Tullos' initial search of the package was undertaken as a private citizen, not an agent for the police, was supported by sufficient evidence in the record. Therefore, the court did not err in its ruling on his motion to suppress.

Furthermore, since we find that Tullos' initial search was not illegal, defendant's claim that all of the evidence obtained from the subsequent police action of obtaining and serving the search warrant on defendant's house were " 'fruit[s] of [that] poisonous tree' " (*Wong Sun v. United States* (1963) 371 U.S. 471, 488) is without merit.

11

2. *Ineffective Assistance of Counsel*

In a supplemental brief, defendant argues that if his defense counsel's decision to bring a motion to suppress and a separate motion to quash the illegal search warrant procedurally forfeited his arguments regarding the legality of Tullos' search of the FedEx package, his counsel rendered ineffective assistance of counsel.

Defendant, however, does not cite to any authority or provide legal analysis to explain how bringing a motion to suppress and a separate motion to quash the illegal search warrant forfeits appellate arguments regarding the motion to suppress. In his supplemental brief, defendant sets forth the relevant statutory standards for evaluating an ineffective assistance of counsel claim. However, he fails to adequately explain *how* his counsel was deficient.

Since defendant does not develop this argument on appeal, he has waived it. "Issues do not have a life of their own: if they are not raised or supported by argument or citation to authority, we consider the issues waived." (*Jones v. Superior Court* (1994) 26 Cal.App.4th 92, 99.) "An appellate court is not required to examine undeveloped claims, nor to make arguments for parties." (*Paterno v. State of California* (1999) 74 Cal.App.4th 68, 106.) Accordingly, we consider defendant's claim of ineffective assistance of counsel waived.

**DISPOSITION**

The judgment is affirmed.

_____
                     Walsh, J.[*]

WE CONCUR:


_____
           Rushing, P.J.


_____
           Elia, J.

_____

[*] Judge of the Santa Clara County Superior Court assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.