Filed 1/20/23 P. v. Franco CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## THIRD APPELLATE DISTRICT

(San Joaquin)

----

| | |
|---|---|
| THE PEOPLE, | C096003 |
| Plaintiff and Respondent, | (Super. Ct. Nos. MANCRFECOD20120002589, MF034539A) |
| v. | |
| FRANCISCO JAVIER FRANCO, JR., | |
| Defendant and Appellant. | |

After the police informed Pacific Gas and Electric Company (PG&E) about the possibility of electricity theft at two homes, a PG&E representative went to the homes, examined their service lines, took readings, and ultimately told the police the properties were bypassing the electrical meters. Using that report, as well as other information, police obtained a search warrant and found two large marijuana grow operations at the properties and defendant Francisco Javier Franco, Jr., present at one of them. Defendant argues the trial court erred in denying his motion to suppress the evidence against him

1

because PG&E's employee was acting as an agent of the police when he inspected the PG&E connections and reported the crimes. We shall affirm.

FACTUAL AND PROCEDURAL BACKGROUND

The underlying facts for the motion to suppress are taken from the preliminary hearing transcript.

Brian Graddy is a revenue assurance representative for PG&E and investigates energy thefts from PG&E. Graddy testified PG&E receives "a lot" of tips about energy theft from multiple sources, including outside agencies, anonymous tips, and from meter readers. When an investigation demonstrates PG&E is the victim of a crime, Graddy involves law enforcement.

On February 7, 2012, the Tracy Police Department received tips about possible marijuana growing operations at two homes in Tracy. At the preliminary hearing, a Tracy police detective testified that his partner called Graddy on February 8, 2012. During the phone call, the detective's partner told Graddy there might be marijuana grows at each of the two locations and the owners of those homes may be bypassing PG&E's electrical wiring to steal electricity. The detective's partner did not tell Graddy to investigate, and the testifying detective testified he was "not sure" if PG&E would act on this information. In response to the question of whether the detectives contacted PG&E for the specific purpose of conducting an investigation, the detective testified his partner "contacted [Graddy], but not for the sole purpose of investigation. I don't -- I advised him of the possible marijuana grow. I informed him of what the tip we got was." Graddy testified the detectives did not tell him PG&E was a crime victim; he discovered that fact on his own. Without further elaboration, the testifying detective testified he worked with Graddy "a fair bit."

A couple of days after the call, Graddy went to the homes unaccompanied by law enforcement. He examined the PG&E service conduit with a fiberoptic scope from PG&E's service conduit. He also measured the amount of current being used by the

2

homes compared to what the electrical meters at the properties registered. His investigation uncovered the meters underreported the amount of electricity each home was using. For both homes, the cumulative amount of loss to PG&E was $66,605.66 in electricity.

On February 10, 2012, Graddy e-mailed the Tracy police detectives and told them what he found at the properties. He shared that the electrical meters at both properties were bypassed. He also shared the data and photographs he took. Graddy spoke with detectives on February 23, 2012, and repeated this information. Detectives submitted that information with additional information to obtain search warrants for the properties.

Upon the execution of the search warrants, detectives found substantial marijuana grow operations and electrical bypasses at both houses. The electrical bypasses were effectuated through a hole in the sheetrock inside the garages from the PG&E wires prior to the PG&E electrical boxes. Defendant was found at one of the houses.

Defendant filed a motion to suppress the evidence against him in September 2012. The magistrate found Graddy was not an agent of the police, but rather PG&E received the tip and chose to independently investigate finding relevant the facts that PG&E was not required to investigate, the police did not tell PG&E to conduct a search, and the police did not accompany Graddy to the homes. When PG&E decided it was the victim of a crime, Graddy called the police. Thus, the magistrate denied the motion.

Following the preliminary hearing, defendant was charged with two counts of cultivating marijuana and two counts of theft of utility services. (Health and Saf. Code, former § 11358; Pen. Code, § 498.)[1]

After the original motion to suppress was denied, defendant renewed his motion to suppress in the superior court in May 2013. (§ 1538.5, subd. (i).) Defendant asked the court for an additional evidentiary hearing to ask Graddy further questions.

---

[1] Undesignated statutory references are to the Penal Code.

3

At the June 11, 2013 hearing, the trial court denied the renewed motion to suppress. The court noted the scope of the evidence it was allowed to consider was limited to any evidence presented at the preliminary hearing and any additional evidence that could not reasonably have been presented at that hearing. (§ 1538.5, subd. (i).)[2] The court found defendant did not reference any evidence that he could not reasonably have presented at the preliminary hearing and based its ruling solely on the preliminary hearing testimony.

On the merits, the trial court concluded there was insufficient evidence to show law enforcement participated in or affirmatively encouraged PG&E's private search and that PG&E had an independent motive to investigate other than crime detection or prevention—it wanted to know if a customer was taking electricity from them without paying for it. The trial court denied the motion.

In November 2014, defendant filed a motion for discovery seeking information on all instances where the Tracy Police Department had worked with PG&E regarding electrical bypasses in buildings suspected of growing marijuana. The trial court granted that motion. The court held a further hearing on that discovery request in July of 2015 at which Graddy testified again as to the facts of this case without significant variance, and more generally on the interactions between PG&E and the Tracy Police Department. He testified he received tips from the police department five or six times a year, usually by a telephone call informing him that PG&E might be the victim of electricity theft. He usually checked the validity of the information through PG&E records and visited the location where he took measurements to determine if there was a discrepancy between what is being registered and what was being used. He also used his fiberoptic scope to

---

[2] Defendant acknowledges this rule and does not argue any evidence outside of what was presented to the magistrate should have been considered by the trial court at the hearing on the renewed motion.

4

examine the PG&E service wire. He noted between January 1, 2010, and July 1, 2015, there were 29 instances where electricity was being stolen to cultivate marijuana in the City of Tracy. Not all of these investigations originated from law enforcement tips.

In January 2018, the trial court denied defendant's further discovery request for e-mails between PG&E and the Tracy Police Department. The court noted the materials defendant sought about PG&E's involvement with law enforcement were more likely contained in the files of the public defender's office.

Defendant filed another motion to suppress in March 2018 and sought another evidentiary hearing as to whether Graddy was acting as a police agent. In conjunction with that motion, defendant filed a chart under seal detailing information from the public defender's files disclosing interactions between PG&E and the Tracy Police Department between 2010 and 2014. In that packet, the public defender's office listed a total of 39 cases (two from 2010, four from 2011, 13 from 2012, 14 from 2013, and six from 2014). In 13 of those cases, Graddy or PG&E responded to a tip from the police, investigated, and provided police with information. In another 16 of those cases, PG&E responded to the scene or was otherwise present during a police search. In two cases, PG&E provided the subscriber's name as requested by the police and responded to the scene. In seven of the cases, Graddy reported theft activity but the summary notes show there is no information as to how or when Graddy was tipped to this activity.

Defense counsel asserted this summary was not presented sooner because she did not know about these facts at the time of the preliminary hearing, and "was not, therefore, in a position to present that evidence to the magistrate." The trial court considered defendant's third motion to suppress as a motion to reconsider the second motion and ultimately denied it finding defendant did not establish PG&E was acting as an agent of the police.

In terms of the pleadings, upon defendant's invitation the trial court reduced the marijuana cultivation counts to misdemeanors. It further granted the prosecution's

motion to amend the information to add a misdemeanor count of grand theft. Defendant pled no contest to the added grand theft charge and the trial court dismissed the other four counts on the prosecution's motion. The trial court granted defendant probation and ordered him to pay $68,640.71 in restitution for the stolen electricity to PG&E.

Defendant timely appealed.

DISCUSSION

Defendant contends the trial court erred in denying his motion to suppress evidence because Graddy acted as an agent of the Tracy Police Department when he inspected the power connections without a search warrant or legal justification. We disagree.

In reviewing an order denying a suppression motion, we defer to the trial court's factual findings if they are supported by substantial evidence, but we exercise our independent judgment in determining the legality of the search or seizure on the facts so found. (*People v. Tully* (2012) 54 Cal.4th 952, 979.) The trial court is the factfinder in a proceeding to suppress evidence, and it is vested with the power to judge the credibility of the witnesses, resolve any conflicts in the testimony, weigh the evidence, and draw factual inferences. (*Ibid*.) Accordingly, we consider the record in the light most favorable to the trial court's disposition and accept the trial court's resolution of disputed facts and its assessment of credibility. (*Ibid*.)

While the Fourth Amendment of the federal Constitution protects against unreasonable searches and seizures by the government, it does not apply to actions by private citizens, unless the private citizen acted as an agent or instrument of the government. (U.S. Const., 4th Amend.; *People v. Wilkinson* (2008) 163 Cal.App.4th 1554, 1564 (*Wilkinson*).)

Whether a private citizen is acting as an agent of the government is an issue of fact. (*People v. Warren* (1990) 219 Cal.App.3d 619, 622-623.) " 'Determining whether the requisite agency relationship exists "necessarily turns on the degree of the

6

Government's participation in the private party's activities, . . . a question that can only be resolved 'in light of all the circumstances.' " [Citation.] This is . . . "a fact-intensive inquiry that is guided by common law agency principles." [Citation.] The defendant bears the burden of proving that an agency relationship exists. [Citation.]' " (*Wilkinson, supra*, 163 Cal.App.4th at pp. 1565-1566 [adopting federal standard].)

" 'In order to run afoul of the Fourth Amendment, . . . the Government must do more than passively accept or acquiesce in a private party's search efforts. Rather, there must be some degree of Government participation in the private search. . . . [¶] . . . [T]wo primary factors . . . should be considered in determining whether a search conducted by a private person constitutes a Government search triggering Fourth Amendment protections. These are: (1) whether the Government knew of and acquiesced in the private search; and (2) whether the private individual intended to assist law enforcement or had some other independent motivation. [Citations.]' " (*Wilkinson, supra*, 163 Cal.App.4th at p. 1566.) With regard to the first factor, there must be some evidence of government participation in or affirmative encouragement of the private search. (*Id*. at p. 1567.) In addition, a dual motive will not necessarily subject a private party's search to the Fourth Amendment, however, that private party's independent motive apart from crime prevention and detection does not automatically immunize the search from scrutiny. (*Id.* at p. 1568; *United States v. Cleaveland* (9th Cir. 1994) 38 F.3d 1092, 1094.)

In *United States v. Cleaveland, supra*, 38 F.3d 1092, the Ninth Circuit examined facts very similar to those at issue here. An electric company employee received an anonymous tip about the theft of power. (*Id.* at p. 1093.) As was typical, the employee reported the tip to the local police department. (*Ibid.*) The employee told the police he was going to go inspect the meter and asked them to be present while he did his search for his safety as well as to obtain a warrant if he discovered malfeasance. (*Ibid.*) The police waited a block away while the employee went onto the property and discovered

the power diversion and reported that fact to the police. (*Ibid.*) In concluding the employee was not acting as an agent for the government, the court stated the electric company had a " 'legitimate, independent motivation' to further its own ends.' [Citations.] That motivation was not negated by any dual motive to detect or prevent crime or assist the police, or by the presence of the police nearby during the search." (*Id.* at p. 1094.) The court did note that the decision to search the property was initiated by the electric company, not the police, however, the police department did not have any reason to restrain or discourage the search once it was on notice of the private party's intent to follow up on the tip. (*Ibid.*)

On the other hand, when a private party engages in joint action with the police, courts will suppress evidence discovered in a warrantless search. (*Stapleton v. Superior Court* (1968) 70 Cal.2d 97, 100-101.) In *Stapleton,* police asked a credit card agent to join them in a search of the defendant's home and instructed the agent to cover the back of the home to prevent escape while the police approached from the front door. (*Id.* at pp. 98-99.) During the subsequent joint search with the police department, the agent took it upon himself to search the defendant's car, which was not covered by the warrant, where he discovered tear gas. (*Id.* at p. 99.) The court concluded this joint action converted the credit card agent into an agent of the police and the evidence uncovered by his search of the defendant's car without a warrant was inadmissible. (*Id.* at p. 102.)

Here, substantial evidence supports the trial court's factual findings and subsequent conclusion that defendant failed to meet his burden. While the police did provide Graddy with information that homeowners might be bypassing PG&E's electrical wiring at two addresses, the detective did not order or otherwise direct Graddy to do anything with that information. Indeed, the testimony before the magistrate was the detective was not sure if Graddy would follow up on this tip. It stands to reason he wanted Graddy to follow up on this tip, but that desire alone did not convert Graddy into a government agent.

8

This was not a joint operation at the direction of the police. The police did not invite Graddy to join a search of defendant's property. Graddy did not pre-alert the police of his solo visit to the property, nor were the police present when Graddy's activities occurred. As Graddy testified, he received tips from many sources, including PG&E's own software, law enforcement, and others. Further, he testified it was common for him to report the matter to law enforcement when his investigation showed PG&E was the victim of a crime.

The record also demonstrates PG&E has a direct legitimate and independent interest in investigating this tip—to be paid for the electricity it supplies its customers— just like it did in *United States v. Cleaveland, supra*, 38 F.3d at page 1094. The evidence established this self-interest was the motivating factor for Graddy's visit to the properties in this case and presumably the reason PG&E created the job of revenue assurance representative to investigate electricity thefts from the private utility in general. If PG&E conducts crime detection or prevention *on their own and to protect their own interests* it's not a government search and nothing in this record suggests that Graddy's motivation was overridden by any direction by or from the police.

In reaching this conclusion, we are aware of the summary of cases defendant submitted after the original magistrate's hearing. This new information submitted by counsel in 2018 (six years after the original hearing) reflects counsel's summary of the contents of files of the public defender's office for cases it handled between 2010 and 2014. While defendant cites these facts in its opening brief, defendant does not demonstrate why this summary of cases handled by the public defender's office could not reasonably have been submitted at the original hearing on the motion to suppress in front of the magistrate in 2012, or at the special hearing in front of the trial court in 2013. In the trial court, defense counsel simply stated she was unaware of this preexisting trove of information that resided in her own office at the time of the prior hearings. This recital

9

does not demonstrate this evidence could not reasonably have been presented at that hearing. (§ 1538.5, subd. (i).)

Even with this summary of other cases, we conclude that substantial evidence supports the trial court's findings defendant failed to establish PG&E was an agent of the Tracy Police Department in this case. More than half of the cases summarized occurred in 2012 and later. Given the evidence submitted about this particular case, what happened in unrelated cases after this case has limited persuasive weight as to the question of whether Graddy was acting as an agent for the police during this investigation in February 2012. To the extent many of the remaining summaries recite Graddy or another PG&E employee was present during a search, these summaries do not show PG&E acted as an agent of the police. Similarly, the remaining six instances where tips from unknown parties resulted in Graddy inspecting the property and reporting the theft of electricity to the police further support the finding Graddy was acting in his role as an employee of and on behalf of PG&E, not the police, when he investigated the thefts of electricity.

We are thus left with six cases over three years where the police provided a tip to PG&E, and PG&E investigated and reported their findings back to the police. Beyond counsel's bare recital of some of the facts of those cases, defendant provided no evidence or testimony from PG&E, Graddy, or the police officers as to what actually happened in each of these cases. While this evidence shows the Tracy Police Department was aware PG&E, and more specifically, Graddy, had inspected properties when alerted to possible electrical theft in the past, the police department's knowledge of this private entity's activities and passive acquiescence is not enough to convert Graddy into a government agent here. (*Wilkinson, supra*, 163 Cal.App.4th at p. 1566.) The trial court's finding on this factual question that Graddy was not acting as a police agent is supported by substantial evidence.

DISPOSITION

The judgment is affirmed.

                                                 /s/
                                      BOULWARE EURIE, J.

We concur:

   /s/
DUARTE, Acting P. J.

   /s/
RENNER, J.

11