NOT FOR PUBLICATION

FILED

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

DEC 30 2025

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 24-7229 |
| Plaintiff - Appellee, | D.C. No. 3:21-cr-01590-JLS-1 |
| v. | |
| JOSE ANGEL SERRANO, | MEMORANDUM* |
| Defendant - Appellant. | |

Appeal from the United States District Court
for the Southern District of California
Janis L. Sammartino, District Judge, Presiding

Argued and Submitted December 8, 2025
Pasadena, California

Before: M. SMITH, CHRISTEN, and FORREST, Circuit Judges.

Defendant-Appellant Jose Angel Serrano conditionally pleaded guilty to drug

and firearm possession charges and was sentenced to 120 months of imprisonment.

He now appeals the district court's denial of his motion to suppress evidence

obtained from his residence. "We review de novo a district court's denial of a motion

---

\* This disposition is not appropriate for publication and is not precedent
except as provided by Ninth Circuit Rule 36-3.

to suppress, reviewing for clear error the district court's underlying factual findings." *United States v. Lara*, 815 F.3d 605, 608 (9th Cir. 2016). We affirm.

1. ***Consent.*** "[O]ne of the specifically established exceptions to the requirements of both a warrant and probable cause is a search that is conducted pursuant to consent." *Schneckloth v. Bustamonte*, 412 U.S. 218, 219 (1973). Serrano first argues that his wife, Jacqueline Valenzuela, could not have consented to the officers' "[s]earch of the garage in general" because she lacked actual authority. Serrano contends that the garage was his "personal space in the house," that he had "granted [the family] access on a limited basis," and that any use beyond that basis would have been contingent on his approval. "A third party has actual authority" to consent to the search of a space "when [s]he has 'mutual use of the property [and also has] joint access or control for most purposes.'" *United States v. Dearing*, 9 F.3d 1428, 1429 (9th Cir. 1993) (second alteration in original) (quoting *United States v. Matlock*, 415 U.S. 164, 171 n.7 (1974)), *overruled on other grounds by*, *United States v. Kim*, 105 F.3d 1579 (9th Cir. 1997).

Here, Valenzuela had Serrano's permission to use the garage to access their refrigerator, care for their dogs, fix their motorcycles, and work on various house projects. In addition to accessing the garage "for h[er] own purposes," *Kim*, 105 F.3d at 1582, as Serrano's wife, Valenzuela lived in "their joint . . . residence" and had ready access to the garage key—each of which is indicative of her actual authority

over the entire premises. *See United States v. Guzman*, 852 F.2d 1117, 1122 (9th Cir. 1988). Taken together, these circumstances are more than enough to conclude that Valenzuela had "joint access . . . for most purposes" such that she had actual authority to consent to the officers' search of the garage. *Matlock*, 415 U.S. at 171 n.7.

Serrano further argues that even if Valenzuela had authority to consent to the search of the garage, "she did not have authority over the locked workbench" in the garage. However, because the officers entered the garage with Valenzuela's consent, they did not need probable cause to view the objects inside the garage. *See Schneckloth*, 412 U.S. at 219.

2.      ***Plain View.*** Serrano also contends that Officer Myers's inspection of the gap between the locked workbench drawers was not sufficiently "cursory" to fit within the meaning of "plain view." Specifically, Serrano argues that Officer Myers conducted more than a cursory inspection when he "focused on [the workbench], asked family members if they knew whether it contained drugs, and crouched down and used his flashlight to peer into" a gap between its drawers. We disagree. Under the Fourth Amendment, there is no "search" when officers conduct "a truly cursory inspection," which "involves merely looking at what is already exposed to view, without disturbing it." *Arizona v. Hicks*, 480 U.S. 321, 328 (1987). "[O]nce police are lawfully in a position to observe an item first-hand, its owner's privacy interest

in that item is lost . . . ." *Illinois v. Andreas*, 463 U.S. 765, 771 (1983). Likewise, an officer's use of a flashlight to illuminate what is already in sight does not transform anything "encompassed within the plain view doctrine" into a "search." *E.g.*, *United States v. Hood*, 493 F.2d 677, 680 (9th Cir. 1974). And Serrano does not otherwise explain how, if at all, Officer Myers's ancillary attention "disturb[ed]" the workbench. *Hicks*, 480 U.S. at 328.

   3.   ***Private Search.*** Finally, Serrano argues that Valenzuela was operating as a government actor when she opened and examined the workbench's contents in front of the police, triggering Fourth Amendment protections. We have recognized that the Fourth Amendment only "protects individuals from government actors, not private ones." *United States v. Wilson*, 13 F.4th 961, 967 (9th Cir. 2021). As such, the Fourth Amendment's protections are "wholly inapplicable 'to a search or seizure, even an unreasonable one, effected by a private individual not acting as an agent of the Government or with the participation or knowledge of any governmental official.'" *United States v. Jacobsen*, 466 U.S. 109, 113 (1984) (quoting *Walter v. United States*, 447 U.S. 649, 662 (1980) (Blackmun, J., dissenting)). To determine whether a private party was acting as a government agent or instrument, we consider "(1) whether the government knew of and acquiesced in the intrusive conduct, and (2) whether the party performing the search intended to assist law enforcement efforts or further h[er] own ends." *United States v. Miller*, 688 F.2d 652, 657 (9th

Cir. 1982). "In analyzing the second requirement—the private party's intent in searching—we look to whether it acted to 'assist law enforcement efforts,' or whether it had a 'legitimate, independent motivation to further its own ends.'" *United States v. Rosenow*, 50 F.4th 715, 733 (9th Cir. 2022) (quoting *United States v. Cleaveland*, 38 F.3d 1092, 1094 (9th Cir. 1994)). Where "a legitimate, independent motivation is established, 'that motivation is not negated by any dual motive to . . . assist the police, or by the presence of the police nearby during the search.'" *Id.* (quoting *Cleaveland*, 38 F.3d at 1094).

Serrano claims that Valenzuela intended to assist law-enforcement efforts since, in seeking to have Serrano arrested, "the purpose of her actions in the presence of the police was the same" as theirs. But Valenzuela's interest was not "in preventing criminal activity[] on its own." *Id.* Instead, she told the police that she wanted Serrano arrested because she believed that he had hidden a gun in their home, and that she and her daughters would not be safe with him in the home. Valenzuela's interest in protecting her daughters was more pronounced because the family had called the police after one of her daughters alleged that Serrano had drugged and raped her.

Because Valenzuela "had a 'legitimate, independent motivation to further [her] own ends,'" *id.* (quoting *Cleaveland*, 38 F.3d at 1094), satisfying the second requirement of the private-actor analysis, we do not consider whether Officer

Myers's actions in accepting her invitation to see what was in the garage, "follow[ing] her into the garage, h[olding] a flashlight while she unlocked the top drawer . . . and rummaged around," and "t[aking] over once she stopped" satisfy the first requirement. Valenzuela's examination of the workbench's contents constituted a private search and did not implicate the Fourth Amendment.

**AFFIRMED.**

24-7229